**Milton BLAKEMORE, et al.**

v.

**John B. COLEMAN, d/b/a the Fairfax and the Jockey Club, Appellant.**

**No. 82–1187..**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1982.

Decided March 4, 1983.

M. Michael Cramer, Rockville, Md., for appellant.

Michael J. Connelly, New York City, for appellees. Robert J. Woody, New York City and E. Payson Fitts, Washington, D.C., were on brief, for appellees.

Before MacKINNON, MIKVA and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case, premised on diversity jurisdiction, requires that the court apply the law of bailment for the District of Columbia. Eleanor and Milton Blakemore initiated this suit in federal district court to obtain damages for jewelry that disappeared while they ate lunch in The Jockey Club restaurant, owned by John B. Coleman and located in The Fairfax hotel (collectively referred to as defendants). The case proceeded through a full trial, after which a jury awarded the Blakemores $35,680 in compensatory damages. We reverse the judgment on that verdict, however, because a central issue was erroneously removed from the jury's deliberations: whether the defendants had constructive knowledge that valuable jewelry was stored in the Blakemores' luggage. We therefore remand this case to the district court for a new trial.

## I. BACKGROUND

The decision in this case turns uniquely on the facts. The Blakemores were in Washington, D.C. to celebrate President Reagan's inauguration, staying as overnight guests at a hotel in Georgetown. Before returning home, they decided to have lunch at The Jockey Club, a restaurant with a reputation for elegance. Upon arriving at the restaurant, which was then part of The Fairfax hotel, the Blakemores checked their car and three large suitcases with the hotel doorman. At the same time, they carried two pieces of hand luggage—a briefcase and a small, carry-on bag—into the hotel themselves. It was the carry-on bag that contained the jewelry that eventually disappeared; specifically, the missing jewelry was in one of two small jewelry pouches that the Blakemores had stored in the bag. The bag itself was made of leather, was two feet long by nine-and-one-half inches wide, and was closed only by means of a zipper. No other locks or safety devices secured the main compartment of the bag.

When the Blakemores entered the hotel, they checked their two bags with the hotel bellman, who proceeded to place the bags in a small holding room or checkroom adjacent to the lobby. That room had neither a door separating it from the lobby nor any posted sign that would limit the defendants' liability under D.C.CODE ANN. § 34–101 (1981) (allowing hotels to limit liability if, *inter alia,* they conspicuously post such notice). The Blakemores did not inform the bellman of the valuable jewelry contained in their bags or ask about locked storage areas; neither did the bellman inquire whether such valuables existed or inform the Blakemores that safety deposit boxes or other locked storage compartments were available for their use.

Following their lunch in the restaurant, the Blakemores returned to the hotel lobby to retrieve their belongings. Having done so, Mrs. Blakemore immediately opened the carry-on bag only to discover that one of the jewelry pouches was missing. It was at this point that the defendants actually were notified of the jewelry's existence and ap-

parent disappearance. A search of the hotel by employees of The Fairfax and the police was unsuccessful in locating the missing pouch or any of the jewelry that it contained.

Four months later, the Blakemores filed this action in district court seeking compensation for the missing jewelry. At a pretrial conference, counsel for the Blakemores requested jury instructions that incorporated a theory of innkeeper's liability, or alternatively, that charged the defendants with responsibility under the law of bailment. The trial judge ruled against the Blakemores on the issue of innkeeper's liability, but allowed the case to go to the jury on an ordinary bailee-for-hire theory. Specifically, the jury was instructed in relevant part as follows:

> If you find by a preponderance of the evidence that the defendant's employees accepted the custody of the plaintiffs' luggage, and that the plaintiffs' jewelry was contained in such luggage when checked with the defendant's employee, but was missing [when] that luggage was returned to the plaintiffs, you must find defendant liable for the loss of the jewelry . . . .

Trial Transcript (Tr.) 438. Based on this instruction, the jury returned its verdict in favor of the Blakemores. The defendants then moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, claiming that the court erred when it failed to instruct the jury that the defendants could be held liable as bailee of the jewelry only if they had knowledge, either actual or constructive, of the jewelry's existence. *See* Record Excerpts (RE) 10. These motions were denied by the district court in a written order, RE 6–9, and this appeal followed.

## II. INNKEEPER'S LIABILITY

Before discussing the issue of constructive knowledge that is central to this appeal, we must consider an alternative basis urged by the Blakemores for upholding the judgment of the district court. Specifically, the Blakemores argue that the trial judge should have found the defendants subject to innkeeper's liability, making them responsible for the contents of luggage belonging to their guests regardless of their knowledge about those contents.[1] *See, e.g., Governor House v. Schmidt,* 284 A.2d 660 (D.C.1971). It is true that application of the strict liability imposed on innkeepers would require affirmance of the district court's judgment; but the Blakemores misconstrue the basis on which D.C. law premises an innkeeper-guest relationship. Indeed, in the latest case to define the scope of that relationship, *Wallace v. Shoreham Hotel Corp.,* 49 A.2d 81 (D.C. Mun.App.1946), the D.C. Municipal Court of Appeals explicitly held that "[o]ne who is merely a customer at a bar, a restaurant, a barber shop or [a] newsstand operated by a hotel does not thereby establish the relationship of innkeeper and guest." *Id.* at 82; *cf. Governor House,* 284 A.2d at 661–62 (applying innkeeper's liability in action brought by overnight guests of hotel); *Hotel Corp. of America v. Travelers Indemnity Co.,* 229 A.2d 158 (D.C.App.1967) (same). Absent any indication that the D.C. courts have subsequently modified that definition, the federal courts are bound to follow that holding when applying D.C. law.

Nor is there any sound justification for distinguishing between the Blakemores and

---

1. The defendants argue, without citation, that the Blakemores have not properly raised the issue of innkeeper's liability because they did not formally file a cross-appeal in this court. Such a contention, however, fails to comprehend the ordinary practice of federal appellate courts. Although an appellee may not attack a district court order "with a view either to enlarging his own rights thereunder or of lessening the right of his adversary," it is "settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." *United States v. American Ry. Express,* 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924) (Brandeis, J.) (footnote omitted); *see also Colautti v. Franklin,* 439 U.S. 379, 397 n. 16, 99 S.Ct. 675, 686 n. 16, 58 L.Ed.2d 596 (1979); *Koniag, Inc. v. Andrus,* 580 F.2d 601, 605 n. 3 (D.C.Cir.), *cert. denied,* 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 713 (1978).

other restaurant patrons simply because the restaurant they happened to visit is located within a hotel. *Cake v. District of Columbia,* 33 App.D.C. 272 (D.C.Cir.1909), heavily relied on by the Blakemores, is not to the contrary. In that case, the court defined "bona fide registered guests" to include customers partaking of a hotel's food or lodging. *Id.* at 277. That court, however, was interpreting language included in a criminal statute, and was not delineating the scope of the innkeeper-guest relationship created by the common law. Thus, the district court was correct to conclude that the Blakemores could not premise their action on the strict liability imposed on innkeepers.

### III. CONSTRUCTIVE KNOWLEDGE

■ The Blakemores can sustain their damages award, therefore, only under a bailee-for-hire theory. The law of bailment for the District of Columbia, which the defendants admit is applicable to this case, requires that the subject matter of the bailment be delivered to, and accepted by, the bailee. It is not required, however, that the bailee have actual knowledge of the property in its custody in order to be liable for the property's eventual loss. Rather, when the property that is subject to the bailment is enclosed within a container, responsibility for its disappearance may rest with the bailee even though the bailee has only constructive or imputed knowledge of its existence. *See Dumlao v. Atlantic Garage, Inc.,* 259 A.2d 360 (D.C.App.1969) (contents of an automobile); *Hallman v. Federal Parking Services,* 134 A.2d 382 (D.C.Mun.App.1957) (same). Such constructive knowledge about the contents of a container has been defined

to include those items that are in plain view, *see Dumlao,* 259 A.2d at 362, or that could be expected, given "common knowledge and experience," to be in a container under the specific facts and circumstances of a particular case, *see Hallman,* 134 A.2d at 385.

The mere articulation of this legal standard inescapably leads to the conclusion that a finding of constructive knowledge is a mixed question of law and fact. As with a finding of negligence, the specific facts underlying a given situation must be determined by the trier of fact before the legal standard can be properly applied. In the usual trial setting, the trial judge will explain the legal standard in his or her instructions, but the jury, uniquely qualified to make factual determinations, will apply that standard to the particular facts at issue. *See generally* W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 37 (4th ed. 1971) (discussing respective functions of court and jury in finding of negligence). In the present case, therefore, whether the defendants had constructive knowledge that the Blakemores' carry-on bag might contain valuable jewelry should have been left to the jury.

The district court ruled first that "[t]he evidence mandated a finding of constructive notice, leaving no question of fact for the jury in this regard," RE 8, and then that "[a]rticles of jewelry are, as a matter of law, commonly and appropriately carried in hand luggage," *id.* Both rulings, which had the effect of conclusively removing this issue from the jury's deliberations, were erroneous.[2]

---

**2.** The Blakemores maintain that the defendants did not timely object to the trial judge's rulings on the issue of constructive knowledge. Specifically, they argue that the jury instructions originally proposed by counsel for the defendants and the objections raised immediately before the court recited its chosen instructions to the jury concerned only actual knowledge. The proposed jury instructions, however, referred to the "knowledge" of the defendants, *see* RE 18, and therefore could be read to include either actual or constructive knowledge. Indeed, the defendants' pretrial brief expressly cited the "express or imputed knowledge" stan-

dard. *See* Defendant's Pretrial Brief at 4, *reprinted in* Appendix to Reply Brief of Appellant. As for the sufficiency of objections raised prior to the court's instructions to the jury, the trial transcript only indicates an objection to "complete knowledge" instructions. Tr. 425–26. Those words, however, apparently were intended to be a brief reference to extended discussions that had already occurred in the judge's chambers. Thus, "complete knowledge" is properly read to include actual or constructive knowledge, and the defendants have satisfied Federal Rule of Civil Procedure 51.

■ The first ruling quoted above—that the evidence "mandated a finding" of constructive knowledge—effectively concluded that every reasonable juror necessarily would have found that the defendants had implied notice of the valuable jewelry contained in the Blakemores' carry-on bag. Although such a finding would not be clearly erroneous if the trial judge were serving as the trier of fact, the trial court committed reversible error when it removed the issue from the jury. The only fact that was conclusively established at trial was that the bag had some tangible contents. Whether those contents were valuable jewelry or just dirty laundry, however, could not be considered a foreclosed issue. Indeed, facts clearly existed from which conflicting inferences could be drawn. For example, it is conceded that the Blakemores arrived at the hotel only to have lunch, that they neither mentioned the valuables stored inside the bag or complained when the bag was placed in an unlocked holding room, and that the bag itself was unlocked. By themselves, these facts would seem to require submission of the case to the jury. *Cf. Dumlao,* 259 A.2d at 362 (upholding a directed verdict in a bailment case when there was "*no* evidence to show knowledge") (emphasis added). *Compare Wilkerson v. McCarthy,* 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497 (1949) ("It is the established rule that in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of a litigant against whom a peremptory instruction has been given.") *with Drapaniotis v. Franklin,* 504 F.2d 236, 237 (D.C.Cir.1974) (per curiam) ("[i]n resolving [whether the trial court erred in directing a verdict for appellee] we must, of course, view the evidence, and the permissible inference therefrom, in the light most favorable to appellant") (citing *Brady v. Southern Railway,* 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943) and *Muldrow v. Daly,* 329 F.2d 886, 888 (D.C.Cir.1964)). *See generally Vander Zee v. Karabatsos,* 589 F.2d 723, 726–28 (D.C.Cir.1978) (discussing standard for entering a directed verdict or j.n.o.v.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979). This is especially true when, as in this case, the trial judge takes an issue from the jury by ruling in favor of the party that bears the burden of persuasion. *Cf. Lucas v. Auto City Parking,* 62 A.2d 557, 559 (D.C.Mun.App.1941) (burden on plaintiff to prove bailment).

■ Nor can we approve of the district court's ruling that valuable jewelry is, "as a matter of law, commonly and appropriately carried in hand luggage." To support that ruling, the trial judge relied on *Hasbrouck v. New York Cent. & H.R.R.,* 202 N.Y. 363, 95 N.E. 808 (N.Y.1911), and the Blakemores cite *Sherman v. Pullman Co.,* 79 Misc. 52, 139 N.Y.S. 51 (App.Div.1913). Even if these New York cases are somehow controlling in a diversity case applying D.C. law, they do not stand for the proposition stated. In *Hasbrouck,* for example, the specific paragraph relied on, 95 N.E. at 813, was an appellate court conclusion that there was sufficient evidence to support the trial judge's findings of fact; no conclusion of law about jewelry was made at the trial level. Similarly, in *Sherman,* the appellate court simply held that the lower court's conclusion that the term "baggage" included jewelry found inside was not "against the weight of the evidence." 139 N.Y.S. at 52. Thus, in both cases the courts were affirming findings of fact made by trial judges serving as triers of fact; neither opinion is appropriate precedent for the lower court's action in the present case.

In sum, a straightforward application of the law of bailment for the District of Columbia requires that the jury determine whether the defendants in this case had constructive knowledge of the existence of valuable jewelry in the Blakemores' carry-on bag. To this extent, the district court's judgment must be reversed, and the case remanded for a new trial.

## IV. PROCEEDINGS ON REMAND

Our holding requires that a retrial on all issues be held. Any decision concerning the

defendant's constructive knowledge of valuable jewelry is too enmeshed with the other issues presented to allow for separate consideration.

Even assuming the jury concludes that the defendants had constructive knowledge that valuable jewelry was contained in the Blakemores' carry-on bag, it does not follow that the defendants would be liable for an unlimited amount or value of jewelry. The defendants had a right to assume that patrons of the restaurant would not check articles having an unreasonably high value without informing the bellman. Thus, the trial judge should further instruct the jury to limit its potential damage award to the maximum value of goods which the defendants reasonably could expect to be left in baggage checked under the particular circumstances of the present case. Only in this way can the necessary and appropriate limits be set on the liability that might be imposed on the defendants.

*It is so ordered.*