Andre WILLIAMS, et al., Appellants,

v.

Marion BARRY, individually and in his official capacity as Mayor of the District of Columbia, et al.

No. 82–1792.

United States Court of Appeals, District of Columbia Circuit.

Argued March 30, 1983.

Decided June 3, 1983.

Bork, Circuit Judge, filed a separate concurring opinion.

Margaret Carey, Washington, D.C., with whom Laura W.S. Macklin and Ilene J. Jacobs, Washington, D.C., were on the brief, for appellants.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellees.

Before WRIGHT, EDWARDS and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Separate concurring statement filed by Circuit Judge BORK.

HARRY T. EDWARDS, Circuit Judge:

This appeal involves a challenge to a District Court decision defining the nature and extent of the constitutionally required due process that must be accorded affected parties before the District of Columbia may close several shelters for homeless men. The District Court concluded that the proposed termination of services implicated a property interest. But the appellants—several homeless men, the Community for Creative Non-Violence ("CCNV"), and two members of the CCNV—contend that the court erred in two respects in defining the procedures that must be followed before that property interest could be extinguished. In particular, they attack (1) the District Court's holding that, under the facts of this case, the Fifth Amendment required only notice of a planned closing and an opportunity to present written com-

ments and (2) the court's declaration that a decision implemented in accordance with these procedures would be immune from judicial review. In the appellants' view, the Fifth Amendment entitles the homeless men to both an opportunity to be heard orally before they are deprived of emergency shelter and a statement of the reasons for a final decision to discontinue services. Even if these more protective procedures are observed, the appellants contend, a decision to close the shelters would be reviewable under an arbitrary and capricious standard.

We find that the District Court accorded the homeless men all the process they are due and, accordingly, we affirm Part I of its decision. We are more troubled by the court's holding on the scope of judicial review. Although we believe that a decision to close the shelters following notice and the submission of written comments might in some circumstances be judicially reviewable, resolution of this issue is plainly unnecessary because the reviewability question was not ripe for decision. As a result, we vacate Part II of the District Court's memorandum opinion.

I

The facts are adequately recounted in the District Court's decision granting a preliminary injunction, *Williams v. Barry,* 490 F.Supp. 941 (D.D.C.1980), and need only be summarized briefly here. As of Spring 1980, the District of Columbia, pursuant to the Policy on Homelessness adopted by Mayor Barry, was directly providing free emergency housing for homeless men at the Blair and Pierce Schools and was funding additional free housing through a contract with the Gospel Mission. In late April 1980, some of the homeless men learned that the Mayor planned to terminate the City's free shelter services for men on May 5. No official or public announcement of the planned closing was made at that time, but City officials later explained that severe budgetary problems had forced them to propose major "reprogrammings" of City funds.[1] The planned termination of free shelter was first announced on May 1. Three days later, this litigation commenced with the filing of a complaint alleging that the contemplated actions violated, *inter alia,* the due process clause of the Fifth Amendment and the District of Columbia Administrative Procedure Act.[2]

The District Court entered a temporary restraining order on May 4 and extended it on May 8. On May 23, 1980, after an oral argument on the plaintiffs' motion for a preliminary injunction, the District Court concluded that "it is incumbent upon the City to apply procedural safeguards before cutting off the funds that support [the shelters]." 490 F.Supp. at 947 (footnote omitted). Rejecting the defendants' argument that their informal provision of services could have created only a unilateral expectation of continued funding, the court concluded that the City's "course of deliberate, consistent action ... created a state fostered expectation of continued shelter services ... [that] rose above the level of a mere hope or desire." *Id.* at 946–47. To protect this "entitlement to a property interest," the court entered a preliminary injunction barring the defendants "from directly or indirectly terminating, reducing, imposing a charge for, or otherwise derogating the free shower, food services, and shelter now provided at Pierce and Blair Schools and, by contract, at the Gospel Mission." *Id.* at 947.

This decision, while making clear that some process was due, left for later determination the "form of pretermination notice and hearing [that] should be provided." *Id.* at 947 n. 2. The requisite procedural safeguards were given substance in the decision from which this appeal was taken. *Williams v. Barry,* Civ. Action No. 80–1104, mem. op. (D.D.C. June 8, 1982), R. 49. All that was required, the District Court held, was the provision to affected parties of particularized notice detailing the reasons

---

1. *See* Affidavit of Gladys W. Mack, Record ("R.") 21, Exhibit B.

2. *See* D.C. CODE ANN. §§ 1–1506(a), 1–1510(a)(3)(A) (1981).

for the proposed closing and a reasonable opportunity to prepare and submit written responses to the proposal. Critical to the court's conclusion that neither an oral hearing nor a written statement of the reasons for a final decision was necessary was its observation that "the instant case indisputably does not involve individual, adjudicatory determinations, but instead involves a more broad-based, legislative policy inquiry." *Id.* at 3. As a result, "the situation ... demands less than the full panoply of procedural protections." *Id.* The appellants vigorously contest this enumeration of their rights. The appellants also object to the District Court's conclusion that the City's adherence to these minimum procedures would render unreviewable a final decision to close the shelters, a conclusion based on the court's belief that such a decision would be "purely political" in nature and that there exist no standards against which the decision could be tested. *Id.* at 6.

## II

Because the appellees abandoned their mootness claim in the oral argument before this court and suggested that they may indeed close some or all of the shelters sometime this year, we turn directly to the merits of this appeal. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (imposing on defendants advancing mootness claim the "heavy" burden of demonstrating that " 'there is no reasonable expectation that the wrong will be repeated' ") (quoting *United States v. Aluminum Co. of America,* 148 F.2d 416, 448 (2d Cir.1945)).

■ Two lines of argument support the District Court's decision that notice of a planned closing and a reasonable opportunity to present written comments constitute all the process that is due the homeless men. The first, on which we primarily rely, is grounded in the legislative nature of the proposed termination of services. Although the line between legislative and adjudicatory actions is not always clear, we recently recognized the force of this distinction in *Gray Panthers v. Schweiker,* 652 F.2d 146

(D.C.Cir.1980). We emphasized there that we were dealing with "an adjudicatory determination; *i.e.,* a particularized inquiry which will determine the legal rights and liabilities of a specific individual," and observed that

rights to procedural protections are at their height in adjudicatory proceedings. Historically, a distinction has been made between determinations of "adjudicatory" facts, which require hearings as a matter of due process, and "legislative" facts, which normally do not .... Generally, ... the broader and more prospective the Government's proposed action is, the fewer procedural protections need be ensured to each individual affected.

*Id.* at 155 n. 18.

The appellants conceded in the oral argument before this court that the decision to close the shelters was legislative in nature, but argued that the reasons for limiting citizens' right to be heard concerning legislative decisions do not apply in this case. Their arguments are unavailing. Their claim that oral hearings are practicable here could be made concerning any number of legislative decisions. And their argument that the homeless are politically powerless ignores three important points: first, the appellants are guaranteed an opportunity under the District Court's order to present their views pursuant to any notice of planned closings of the shelters; second, notwithstanding the District Court's order, the appellants still may be heard in various political forums (such as the City Council) on the issue of shelter closings; and, finally, even assuming that the homeless are indeed "politically powerless," it cannot be said that the right to make written presentations is meaningless or that a right to participate in oral hearings is more effective as a cure for political powerlessness.

We have, to be sure, occasionally "voiced the view that basic considerations of fairness may under exceptional circumstances require oral submissions even in a legislative-type proceeding." *Thompson v. Washington,* 497 F.2d 626, 641 (D.C.Cir.1973). But we are not persuaded that the issues

relevant to a closure decision "cannot be adequately ventilated under a written statement procedure." *Id.* at 641 n. 48. Accordingly, we decline to depart from the general rule—correctly stated by the District Court—concerning the process that is due in connection with legislative decisions.[3]

The second line of argument, which we note only in passing and on which we do not rely, is grounded in doubts concerning whether the homeless men's property interest in the continued operation of the shelters had risen to the level of an entitlement protected by the due process clause of the Fifth Amendment. The appellees' failure to cross-appeal on this question does not preclude them from defending the sufficiency of the procedures required by the District Court by attacking its resolution of this threshold issue. *See United States v. American Railway Express Co.,* 265 U.S. 425, 435–36, 44 S.Ct. 560, 563–64, 68 L.Ed. 1087 (1924); *Blakemore v. Coleman,* 701 F.2d 967, 969 n. 1 (D.C.Cir.1983).

It is, of course, well settled that an entitlement can be "created by the consistent, positive action of government officials." *Sherrill v. Knight,* 569 F.2d 124, 131 n. 22 (D.C.Cir.1977); *see Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). The District Court found a mutually explicit understanding that funding would continue based on a totality of the circumstances that did not

include any statutory right to shelter. *Williams v. Barry,* 490 F.Supp. at 946–47.[4] But the statements and declarations of policy on which the court relied in making this determination often were qualified and couched in the language of short-term measures.[5] We need not resolve the question whether the statements, declarations, and actions of City officials created a constitutionally cognizable entitlement. But the weak and inconsistent nature of the evidence of entitlement provides further support for our ultimate determination that the District Court accorded the homeless men all the process they are due.

III

In Part II of its opinion, the District Court held that, if the proper procedures were followed, a decision to close the shelters would be unreviewable. We conclude that the question of the proper scope of judicial review of a procedurally correct decision to terminate emergency shelter services was not ripe for decision by the District Court. Withholding decision on this issue would have worked no hardship on the parties and would have ensured a more effective adversarial presentation of whatever issues might attend subsequent judicial challenges to the closings of shelters for homeless men. *See generally* 13 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3532 (1975).

---

3. Although we believe that a statement of the reasons for a final decision might be desirable from a policy standpoint, we cannot say, given our conclusion that the proposed governmental action is legislative in nature, that such a statement is constitutionally required.

4. The appellants have attempted to support the District Court's finding of an entitlement by citing D.C.R. & Regs. tit. 6B, § 310.11(c) (1970), which requires the D.C. government to "provide, on a contract basis, temporary shelter and social services to homeless, unattached adult males" as part of its emergency assistance program. Assuming, without deciding, that this regulation is still in effect, *see* District of Columbia Public Assistance Act of 1982, tit. XXI, § 2101(c), 29 D.C.Reg. 1060, 1112, it does not speak to the direct provision of services by the D.C. government and thus could not constitute an entitlement to the continued availability of Blair and Pierce Schools. The regulation

does not provide, moreover, any indication of the level of support or guarantee that any given number of homeless persons will be sheltered. The hortatory language of the regulation, therefore, does not expand the rights of the homeless to City-provided shelter.

5. *See District of Columbia Appropriations for 1981: Hearings Before a Subcomm. of the House Comm. on Appropriations,* 96th Cong., 2d Sess. pt. 2, at 1645 (1980) (Department of Human Services' response to submitted questions); Statement of Marion S. Barry, Jr. at Press Conference on Homelessness (Feb. 14, 1979), *reprinted in* R. 17, Exhibit D, at 1, 2 ("we have developed specific short-range solutions to the problem of homelessness"; the Pierce School arrangement "will be in effect for, at least, thirty days· or until the cold season is over").

## IV

For the reasons set forth above, we affirm Part I and vacate Part II of the District Court's decision.

*So ordered.*

BORK, Circuit Judge, concurring:

I concur in the judgment and, with one caveat, in the court's opinion. Judge Edwards makes clear that the claim to a "property interest" in homeless men's shelter here is insubstantial and will not support any claims that additional process is due. Had there been a cross appeal, I think it highly likely that no process would have been found due. This same conclusion is also compelled by the nature of the decision the Mayor is to make. The court refers to that decision as legislative rather than adjudicative, states that this is the primary reason to refuse to require additional procedures, but cites *Thompson v. Washington,* 497 F.2d 626, 641 (D.C.Cir.1973), for the proposition that, under exceptional circumstances, basic considerations of fairness may impose a constitutional right to make oral submissions even in a proceeding that is legislative in nature. Even should one concede that a legislative procedure within an administrative agency might in some exceptional circumstances require, as a matter of constitutional law, that oral or written submissions be received, that concession would be wholly irrelevant to this case. The Mayor is an elected official and his decision on the shelters is a political one. From the beginning of judicial review it has been understood that such decisions need not be surrounded and hemmed in with judicially imposed processes. Indeed, the reasons for judges not interfering with the methods by which political decisions are arrived at are closely akin, if not identical, to the considerations underlying the political question doctrine, a doctrine which denies the courts jurisdiction even to enter into certain areas. Thus in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 165–66, 2 L.Ed. 60 (1803), it was said:

By the constitution of the United States, the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character, and to his own conscience....

... [W]hatever opinion may be entertained of the manner in which executive discretion may be used, still there exists, and can exist, no power to control that discretion. The subjects are political. They respect the nation, not individual rights, and being entrusted to the executive, the decision of the executive is conclusive.

This case involves the Mayor of the District of Columbia, not the President of the United States, but the principle is identical. No one has plausibly maintained that there is a constitutional or other legal right to city-provided shelter. There being no substantive constraints on the decision whether to close the shelters, that decision is a wholly political one and under no circumstances that I can imagine can there be a constitutional right to have that political judgment set about and circumscribed by procedural requirements. For the same reason, I cannot subscribe to the court's suggestion that a decision to close the shelters might in some circumstances itself be judicially reviewable. Majority Opinion at 790. Given our legal tradition, the suggestion that there may be judicial imposition of procedures on, and review of, plainly political decisions is revolutionary. It ought to be recognized as such, lest judges grow accustomed to the suggestion that they may control any process and begin to assume powers that clearly are not theirs.