Keith B. GRIMES, Appellant,

v.

DISTRICT OF COLUMBIA, et al.

No. 86–5249.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1987.

Decided Jan. 15, 1988.

---

648

Keith B. Grimes, pro se.

Susan S. McDonald, Asst. Corp. Counsel, District of Columbia, with whom Franklin R. Cook, Jr., Acting Corp. Counsel, District of Columbia, and Charles L. Reischel, Deputy Corp. Counsel, District of Columbia, Washington, D.C., were on the brief, for appellees.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and FRIEDMAN *,

* Sitting by designation pursuant to 28 U.S.C.

Circuit Judge, United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge FRIEDMAN.

FRIEDMAN, Circuit Judge:

This appeal by the successful plaintiff in a suit charging violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (1982), challenges as inadequate to remedy the violation found, the damages the United States District Court for the District of Columbia awarded, 630 F.Supp. 1065. The appellant also challenges the district court's rejection of his claim that the appellees' action on which he based his Equal Pay Act claim also violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (1982). We hold that, based on the Equal Pay Act violation found, the appellant is entitled to the additional damages he seeks. Since those additional damages would give the appellant the same amount he could have received under his Title VII claim, we find it unnecessary to consider the latter claim. We therefore vacate the judgment of the district court and remand the case for that court to increase the damages.

## I

A. The appellant Grimes' complaint alleged that the District of Columbia (District) and the appellee Shelton, Director of the agency where the appellant had worked, the District's Office of Human Rights (Office), had violated the Equal Pay Act and Title VII of the Civil Rights Act. The charge was that they had discriminated against him on the basis of sex and national origin (West Indian) by paying women and non-West Indian males more for performing essentially the same work that Grimes did. He also alleged that the Office's failure to appoint him to another job was unlawful retaliation for his having filed with the Equal Employment Opportunity Commission a charge of discrimination by his agency.

After trial, the district court upheld the Equal Pay Act claim and awarded dam-

§ 291(a).

ages. The court rejected on the merits the claims of violation of Title VII and retaliatory failure to appoint. In this appeal, Grimes does not challenge the dismissal of the latter claim.

B. The background facts, as found by the district court, are largely undisputed (except as noted).

In April 1981, the Office hired Grimes as a temporary full-time paralegal at grade DS–7. Grimes was a recent law school graduate who had not been admitted to the bar. Grimes received a series of short-term appointments, typically three months, the last of which expired on April 30, 1983. He was separated on that date.

At the end of the 1981 fiscal year, Grimes' supervisor, Ms. Ridgley, recommended that he be promoted to DS–9 "as he was performing duties beyond his DS–7 grade." The director of the Office (appellee Shelton) informed Ms. Ridgley, however, that "there were no funds available to promote anyone." When Grimes' appointment ended on April 30, 1983, he still was a grade DS–7.

According to Grimes, when he was hired four American males who performed duties similar to his were grade DS–11. Grimes admitted, however, that all four presented cases to the Office's Human Rights Commission, which the appellant did not do, and that three of the four were permanent rather than temporary employees.

In the fall of 1982, the Office hired three paralegals. Two of them were hired at grade DS–11, and the third was hired as an intern at grade DS–7. One of the two hired at DS–11 was a member of the bar and presented cases to the Human Rights Commission. Although the district court found that the other grade DS–11 paralegal, Sylvia Lang (whom the court referred to as "Long"), was hired "[i]n the fall of 1982," Grimes testified that she "was hired approximately in June or July of 1983."

In April 1984, a year after Grimes' appointment had ended, the Office made a classification review, which "concluded that [Grimes'] duties while a paralegal specialist entitled him to a DS–9 grade and salary."

Beginning "[e]arly in 1982," Ms. Ridgley received "several complaints concerning [Grimes'] sexual harassment of women complainants."

Shortly before his separation in April 1983, Grimes learned that the Office was planning to hire grade DS–11 paralegals. He applied for one of those positions but was not selected for it.

C. In upholding Grimes' Equal Pay Act claim, the district court ruled:

[I]n the case of Long [sic], defendants did not challenge plaintiff's claim that she performed essentially the same tasks as he. Moreover, defendants' own audit of plaintiff's classification revealed that he should have been paid a DS–9 salary.... Defendants here have essentially conceded that plaintiff should have been paid a DS–9 salary, yet they have never compensated him for the wages he lost due to the improper classification. As a result, plaintiff has established an Equal Pay Act violation, and is entitled to receive the differential between a DS–7 and DS–9 grade during the time he was employed at OHR.

With respect to the claim under Title VII of the Civil Rights Act, the court held that Grimes had established a prima facie case of sex discrimination, but that he "completely failed to carry his burden on his claim of discrimination based on national origin." The court ruled that the defendant had rebutted that "weak" prima facie case by "demonstrat[ing] a legitimate, nondiscriminatory business reason for the difference in pay between plaintiff and at least the one female employee," namely that "the salary discrepancy was simply a clerical error. While such an explanation is perhaps not the most traditional of 'business reasons,' it is sufficient to negate the rather weak inference of discriminatory intent raised by plaintiff's prima facie showing."

Finally, the court held that the "defendants had a legitimate, nondiscriminatorty [sic] business reason for refusing to hire plaintiff as a DS–11 paralegal specialist"— the acts of sexual harassment that Grimes had committed—"and that his claim of un-

lawful retaliation must therefore be dismissed."

Grimes has appealed from the judgment of the district court insofar as it (1) awarded him only the difference between the pay of grade DS–7 and grade DS–9, instead of the difference between DS–7 and DS–11, and (2) dismissed his Title VII claim. The District and Ms. Shelton have not appealed.

## II

■ A. If there has been a discrimination in pay in violation of the Equal Pay Act, the person who has been paid the lower amount is entitled to recover the difference between that amount and the higher pay that he should have received. As the Supreme Court stated in *Corning Glass Works v. Brennan*, 417 U.S. 188, 208, 94 S.Ct. 2223, 2234, 41 L.Ed.2d 1 (1974):

> If, as the Secretary proved, the work performed by women on the day shift was equal to that performed by men on the night shift, the company became obligated to pay the women the same base wage as their male counterparts on the effective date of the Act.

*E.g., Laffey v. Northwest Airlines*, 740 F.2d 1071, 1100 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed. 2d 951 (1985).

The district court stated that Grimes was entitled "to receive the differential between a DS–7 and a DS–9 grade during the time he was employed at OHR." The violation the court found, however, related to the pay differential between Grimes and Ms. Lang, who, the record shows and the court found, was employed at grade DS–11.

The court apparently overlooked that evidence and finding. Instead, it relied upon the Office's determination the year after Grimes' employment had terminated that the duties of Grimes' position warranted a DS–9 grade, by which the court stated the "[d]efendants here have essentially conceded that plaintiff should have been paid a DS–9 salary, yet they have never compensated him for the wages he lost due to the improper classification."

■ The appropriate relief for the violation the district court found, therefore, was to give Grimes the difference between the pay of grade DS–7, at which he was employed, and the grade DS–11 of Ms. Lang, whom the district court determined performed substantially the same work as Grimes. We know of no justification in the statute or the decided cases under it for limiting the amount of Grimes' recovery as the district court did. To the contrary, effectuation of the statutory purpose—"to ensure that to remedy violations of the Act, '[t]he lower wage rate must be increased to the level of the higher,'" *Corning Glass Works v. Brennan*, 417 U.S. at 207, 94 S.Ct. at 2234—required that Grimes be made whole for the discrimination he suffered by paying him the difference between the pay he received (grade DS–7) and that received by the other employee whose higher pay (DS–11) created the violation.

■ B. The appellees contend, however, that the district court's finding that Ms. Lang performed essentially the same work as Mr. Grimes is clearly erroneous. They cite evidence in the record that Ms. Lang's duties were not the same as Grimes's, and state that, contrary to the district court's statement, they did challenge Grimes' claim that the two people performed essentially the same tasks.

The appellees recognize that their failure to appeal precludes them from challenging the district court's determination of a violation of the Equal Pay Act and the award of damages reflecting the pay differential between grades DS–7 and DS–9. They assert, however, that they may challenge the district court's finding as a defense to Grimes' attempt to obtain the additional damages that the court's determination of violation otherwise would entitle him to receive. To support this unusual argument, the appellees give the following citations: *"Blakemore v. Coleman*, 701 F.2d 969 n. 1 (D.C.Cir.1983) [sic]. *See also Williams v. Barry*, 708 F.2d 789, 792 (D.C. Cir.1983)."

The pertinent portions of *Blakemore* and the accompanying note 1 read as follows:

Before discussing the issue of constructive knowledge that is central to this appeal, we must consider an alternative basis urged by the Blakemores for upholding the judgment of the district court. Specifically, the Blakemores argue that the trial judge should have found the defendants subject to innkeeper's liability, making them responsible for the contents of luggage belonging to their guests regardless of their knowledge about those contents.[1]

[1] The defendants argue, without citation, that the Blakemores have not properly raised the issue of innkeeper's liability because they did not formally file a cross-appeal in this court. Such a contention, however, fails to comprehend the ordinary practice of federal appellate courts. Although an appellee may not attack a district court order "with a view either to enlarging his own rights thereunder or of lessening the right of his adversary," it is "settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." *United States v. American Ry. Express*, 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924) Brandeis, J.) (footnote omitted); *see also Colautti v. Franklin*, 439 U.S. 379, 397 n. 16, 99 S.Ct. 675, 686 n. 16, 58 L.Ed.2d 596 (1979); *Koniag, Inc. v. Andrus*, 580 F.2d 601, 605 n. 3 (D.C.Cir.), *cert. denied*, 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978).

The cited passage in *Williams* merely reiterates the principle recognized in *Blakemore* (which *Williams* cited, together with *Ry. Express*) that without taking a cross-appeal, an appellee may urge as a ground for affirmance anything in the record that supports the judgment of the district court.

A corollary of this principle is that "when the rationale of an argument 'would not dictate affirmance' of the judgment below, but would give the satisfied party *more* than that judgment, even though he is not asking for more," a cross-appeal is required before the appellate court will consider the argument. R. Stern, E. Gressman & S. Shapiro, *Supreme Court Practice*, 384 (6th ed. 1986) (emphasis in original); *see, e.g., Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 381 n. 4, 90 S.Ct. 616, 620 n. 4, 24 L.Ed.2d 593 (1970); *Dalle Tezze v.*

*Director, OWCP*, 814 F.2d 129 (3d Cir. 1987); *Freeman v. B & B Assocs.*, 790 F.2d 145 (D.C.Cir.1986).

*Freeman v. B & B Assocs.*, involved that situation. In that case the Freemans brought suit under the Truth in Lending Act against B & B Associates, seeking damages and rescission of the loan B & B Associates had made to them. The suit was settled when the Freemans accepted an offer of judgment by B & B Associates which rescinded the loan and specifically excluded liability for attorney fees. Fox, the Freemans' attorney, subsequently brought suit under the Truth in Lending Act for attorney fees, on the ground that although the Freemans had waived their claim for attorney fees, Fox's claim against B & B Associates was independent of the Freemans' claim and unaffected by the Freemans' acceptance of the offer of judgment. B & B Associates appealed from the award of attorney fees against them in favor of Fox.

In attempting to uphold the judgment of the district court, Fox and Freeman argued that the waiver of attorney fees was invalid because coercive. This court held that "the validity of the Freemans' waiver of attorneys' fees is not properly before the court because Fox and the Freemans failed to take a cross-appeal from the judgment of the District Court." 790 F.2d at 150 (footnote omitted). The court stated:

The issue for this court therefore is whether the argument appellees raise that their waiver of attorneys' fees was invalid is essentially an attempt to modify the relief granted by the District Court or merely asks us to affirm the District Court on other grounds. If Fox and the Freemans seek only to enforce the District Court's decree, we may consider their argument. "But if a finding for appellees on this claim would necessarily enlarge the relief, we may not and should not consider it."

*Id.* at 151 (citations omitted). The court pointed out:

If this court accepted appellees' argument that the Freemans' waiver was invalid, we would necessarily vacate rather

than reform the offer of judgment. Because reversal of the District Court on the issue of the validity of the Freemans' waiver of attorneys' fees would substantially modify the original relief granted to the parties, Fox and the Freemans were obligated to file a cross-appeal. Although the District Court originally awarded attorneys' fees to Fox independently, the court did not alter in any way the original offer of judgment, which provided for rescission of the Freemans' loan agreement, the payment of costs by B & B Associates and the return of $360.57 to B & B Associates. The original offer of judgment also provided an explicit waiver of the *Freemans'* claim for attorneys' fees. To vacate the offer of judgment, therefore, would clearly modify the rights of B & B Associates under the original judgment of the District Court. In the absence of a cross-appeal we will not consider the validity of the Freemans' waiver of attorneys' fees which was involved in accepting the offer.

*Id.* at 152.

The situation in the present case is similar. If we accepted the appellees' argument that the work performed by Grimes and Ms. Lang was not essentially the same, "we would necessarily vacate rather than" affirm the determination of violation of the Equal Pay Act and the award of damages based upon that violation. The argument thus is not one that the appellees properly may make as a basis for seeking affirmance of the judgment of the district court. The appellees' failure to cross-appeal on this issue precludes them from now raising it.

The appellees have offered no justification or excuse for what we can only describe as gross negligence in failing to appeal the determination that they violated the Equal Pay Act. Both the alleged lack of factual support for the finding that Grimes and Ms. Lang performed essentially the same work, which was the linchpin for the finding of violation, and the district

court's statement that the appellees did not deny the equivalency of their work, must have been readily apparent to the appellees' counsel upon the issuance of the district court's opinion. Indeed, the appellees did not either seek rehearing or move under Rule 60(b) of the Federal Rules of Civil Procedure to correct the district court's alleged errors, which appear to have resulted from mistake or inadvertence.

There may be exceptional circumstances in which we would be justified in considering, without a cross-appeal and as a basis for affirmance, an argument supported by the record that logically would result in modification rather than affirmance. *Cf. Arnold's Hofbrau, Inc. v. George Hyman Constr. Co.,* 480 F.2d 1145, 1150 (D.C.Cir.1973). The appellees' claim in this case, however, that they inadvertently or negligently failed to take an appeal is not sufficient to warrant a departure from the normal appellate practice.

### III

Since the relief that we are ordering—increasing the damages to reflect the difference between the pay at grade DS–7 and DS–11—would give Grimes the full measure of damages he would have been entitled to if he had prevailed in his Title VII claim, it is unnecessary to consider the latter claim.

The judgment of the district court is vacated, and the case is remanded to that court to award damages reflecting the difference in the pay levels of grade DS–7 and DS–11 for the period during which Grimes was employed at the Office of Human Rights, together with a lump sum annual leave payment reflecting the same differential.