**IN RE: SEALED CASE**

Nos. 98–3052, 98–3053 & 98–3059.

United States Court of Appeals,
District of Columbia Circuit.

Decided May 26, 1998.

Ordered Unsealed Dec. 1, 1998.

Nathaniel H. Speights filed the briefs for appellant Monica Lewinsky.

Charles J. Ogletree, Jr. filed the briefs for appellant Francis D. Carter, Esq.

Robert J. Bittman, Deputy Independent Counsel, filed the briefs for cross-appellant the United States.

BEFORE: GINSBURG, RANDOLPH, and TATEL, Circuit Judges.

## ORDER

### PER CURIAM

Upon consideration of the responses of Francis D. Carter and of the United States of America, acting through the Office of the Independent Counsel, to the Court's order to show cause why the opinion in this case should not be unsealed, it is

**ORDERED**, that the opinion in this case is no longer protected from public disclosure by Rule 6(e), FED.R.CRIM.P., in view of the public release, by the House Committee on the Judiciary, of Mr. Carter's grand jury testimony transcript, *see* H.R. Doc. 105–316, at 393–433 (Sept. 28, 1998);  and it is further

**ORDERED**, that the judgment and opinion of this Court in *In re: Sealed Case*, No. 98–3052 (D.C.Cir. May 26, 1998), shall be unsealed;  and it is further

**ORDERED**, that the order to show cause is discharged;  and it is further

**ORDERED**, pursuant to this Court's Local Rule 47.1(c), that the following materials also shall be unsealed:

1. Motion of the United States of America for Summary Dismissal of Appeal of Francis D. Carter, Esq., for Want of Jurisdiction (May 1, 1998);

2. Motion of the United States of America to Expedite Consideration of the Appeal and for an Abbreviated Briefing Schedule (May 1, 1998);

3. Motion of Francis D. Carter for Extension of Time to File Opposition to Motion for Summary Dismissal and Motion to Set Briefing Schedule (May 5, 1998);

4. Response of the United States of America to Motion for Extension of Time to File Opposition to Motion for Summary Dismissal and Motion to Set Briefing Schedule (May 5, 1998);

5. Order of this Court granting motion to expedite and setting briefing schedule (May 5, 1998);

6. Brief of Cross–Appellant United States (May 11, 1998);

7. Cross–Appellant's Appendix (May 11, 1998);

8. Brief for Appellant Francis D. Carter, Esq. (May 11, 1998); ˙

9. Appendix for Appellant Francis D. Carter, Esq. (May 11, 1998);

10. Opening Brief of Appellant Monica Lewinsky (May 11, 1998);

11. Appendix of Appellant Monica Lewinsky (May 11, 1998);

12. Request for Judicial Notice by Appellant Monica Lewinsky (May 11, 1998);

13. Brief of Appellee United States (May 14, 1998);

14. Brief for Cross–Appellee Francis D. Carter, Esq. (May 14, 1998);

15. Reply Brief for Appellant Francis D. Carter, Esq. (May 15, 1998);

16. Reply Brief of Appellant Monica Lewinsky (Lodged May 15, 1998);

17. Reply Brief of Cross–Appellant United States (May 15, 1998);

18. Motion to Night File Reply Brief of Monica Lewinsky (May 19, 1998);

19. Order of this Court granting leave to file lodged reply brief out of time (May 26, 1998);

20. Order of this Court to show cause why the opinion in this case should not be unsealed (Nov. 16, 1998);

˙ 21. Response of the United States of America to the November 16, 1998 Order to Show Cause (Nov. 23, 1998);

22. Response of Francis D. Carter to Order to Show Cause Why Opinion Should Not Be Unsealed and Motion to Unseal Entire Record (Nov. 23, 1998).

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*:

In 1997, Monica S. Lewinsky, a former White House intern, received a subpoena to produce items and to testify in *Paula Jones v. William Jefferson Clinton,* a civil matter then pending in the United States District Court for the Eastern District of Arkansas. The subpoena requested, among other things, documents relating to an alleged relationship between President Clinton and Lewinsky and any gifts the President may have given her. Lewinsky retained Francis D. Carter, Esq., to represent her regarding the subpoena.

Carter drafted an affidavit for Lewinsky, which she signed under penalty of perjury. The affidavit, submitted to the Arkansas district court as an exhibit to Lewinsky's motion to quash the subpoena, states in relevant part:

> I have never had a sexual relationship with the President, [and] he did not propose that we have a sexual relationship.... The occasions that I saw the President after I left my employment at the White House in April, 1996, were official receptions, formal functions or events related to the U.S. Department of Defense, where I was working at the time. There were other people present on those occasions.

On January 16, 1998, at the request of the Attorney General, a Special Division of this Court expanded the jurisdiction of the Office of Independent Counsel to include "authority to investigate ... whether Monica Lewinsky or others suborned perjury, obstructed justice, intimidated witnesses, or otherwise violated federal law ... in dealing with witnesses, potential witnesses, attorneys, or others concerning the civil case *Jones v. Clinton.*" Order of the Special Division, Jan. 16, 1998. On February 2 and 9, 1998, as part of that investigation, a grand jury issued subpoenas to Carter, the first for documents and other items, the second for his testimony. Carter moved to quash the subpoenas, contending, *inter alia,* that the documents, testimony, and other items sought were protected from disclosure by the attorney-client privilege, the work-product privilege, and Lewinsky's Fifth Amendment privilege against self-incrimination. Lewinsky,

as the real-party-in-interest, filed a response in support of Carter's motion. The United States opposed the motion, arguing among other things that the crime-fraud exception vitiated any claims of attorney-client or work-product privilege and that the Fifth Amendment did not bar production of the requested materials. The district court ordered Carter to comply with the two grand jury subpoenas except to the extent that compliance would "call for him to disclose materials in his possession that may not be revealed without violating Monica S. Lewinsky's Fifth Amendment rights."

Carter and Lewinsky argue in separate appeals that the district court erred in rejecting their motions to quash the grand jury subpoenas in their entirety. In its cross-appeal, the United States, through the Office of Independent Counsel, claims that the Fifth Amendment does not bar production of any of the materials the grand jury subpoenaed from Carter.

■ We dismiss Carter's appeal for want of jurisdiction. Well–settled law dictates that "one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *see Cobbledick v. United States*, 309 U.S. 323, 328, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *In re Sealed Case*, 107 F.3d 46, 48 n. 1 (D.C.Cir. 1997). Rather than risking contempt, Carter has sworn that he will comply with the subpoenas if ordered to do so.[1]

■ Our jurisdiction over Lewinsky's appeal is another matter. Lewinsky is the holder of the privilege. Given Carter's

sworn declaration that he will give testimony if ordered, she is entitled to appeal the district court's ruling rejecting Carter's assertion of the privilege. *See In re Sealed Case*, 107 F.3d at 48 n. 1.

The district court held that the crime-fraud exception to the attorney-client privilege applied. After reviewing the government's *in camera* submission, the court found that "Ms. Lewinsky consulted Mr. Carter for the purpose of committing perjury and obstructing justice and used the material he prepared for her for the purpose of committing perjury and obstructing justice."[2] Lewinsky tells us she could not have committed either crime: the government could not establish perjury because her denial of having had a "sexual relationship" with President Clinton was not "material" to the Arkansas proceedings within the meaning of 18 U.S.C. § 1623(a); and her affidavit containing this denial could not have constituted a "corrupt[ ] ... endeavor[ ] to influence" the Arkansas district court within the meaning of 18 U.S.C. § 1503. Both of Lewinsky's propositions rely on the Arkansas district court's ruling on January 30, 1998, after Lewinsky had filed her affidavit, that although evidence concerning Lewinsky might be relevant, it would be excluded from the civil case under FED.R.EVID. 403 as unduly prejudicial, "not essential to the core issues in th[e] case," and to prevent undue delay resulting from the Independent Counsel's investigation.[3]

■ A statement is "material" if it "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a [particular] determination." *United States v. Barrett*, 111 F.3d 947, 953 (D.C.Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 176, 139 L.Ed.2d 117 (1997). The "central object" of any materiality inquiry is

---

1. In addition to adopting Lewinsky's arguments regarding the crime-fraud exception, Carter claims that the subpoenas are overbroad, unreasonable, and oppressive and that the district court's reliance on the Independent Counsel's *ex parte* submissions in enforcing the subpoenas violated due process. Contrary to Carter's contention, the issues he seeks to present are thus neither "virtually identical" to, nor "inextricably intertwined" with, those Lewinsky raises.

2. The district court did not find, nor did the Independent Counsel suggest, any impropriety by Carter.

3. Lewinsky does not appear to contest directly the district court's finding that she made one or more false statements in her sworn affidavit. Even so, we have independently reviewed the *in camera* materials considered by the district court and conclude that sufficient evidence existed to support the court's finding.

"whether the misrepresentation or concealment was predictably capable of affecting, *i.e.*, had a natural tendency to affect, the official decision." *Kungys v. United States,* 485 U.S. 759, 771, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). Lewinsky used the statement in her affidavit, quoted above, to support her motion to quash the subpoena issued in the discovery phase of the Arkansas litigation. District courts faced with such motions must decide whether the testimony or material sought is reasonably calculated to lead to admissible evidence and, if so, whether the need for the testimony, its probative value, the nature and importance of the litigation, and similar factors outweigh any burden enforcement of the subpoena might impose. *See* FED.R.CIV.P. 26(b)(1), 45(c)(3)(A)(iv); *Linder v. Department of Defense,* 133 F.3d 17, 24 (D.C.Cir.1998); *see generally* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (2d ed.1995). There can be no doubt that Lewinsky's statements in her affidavit were—in the words of *Kungys v. United States*—"predictably capable of affecting" this decision. She executed and filed her affidavit for this very purpose.

■ As to obstruction of justice, 18 U.S.C. § 1503 is satisfied whenever a person, with the "intent to influence judicial or grand jury proceedings," takes actions having the "natural and probable effect" of doing so. *United States v. Aguilar,* 515 U.S. 593, 600, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995) (citations and quotation marks omitted); *see United States v. Russo,* 104 F.3d 431, 435–36 (D.C.Cir.1997). Our review of the *in camera* materials on which the district court based its decision convinces us that the government sufficiently established the elements of a violation of § 1503. That is, the government offered "evidence that if believed by the trier of fact would establish the elements of" the crime of obstruction of justice. *In re Sealed Case,* 107 F.3d at 50 (citation and quotation

marks omitted); *see In re Sealed Case,* 754 F.2d 395, 399–400 (D.C.Cir.1985) (same).

■ Lewinsky maintains that the district court erred in treating, as admissible for *in camera* review, transcripts of taped conversations between Lewinsky and Linda Tripp. She relies on the following statement in *United States v. Zolin,* 491 U.S. 554, 575, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989): "the threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *Zolin,* and the statement just quoted, dealt with a rather different problem than the one presented here. Sometimes a party seeking to overcome the privilege by invoking the crime-fraud exception asks the district court to examine *in camera* the privileged material to determine whether it provides evidence of a crime. The issue *Zolin* addressed is under what circumstances a district court should undertake such *in camera* review. *Zolin's* answer, as the quotation indicates, was that the court should do so only when there has been a threshold showing through evidence lawfully obtained. *See In re Grand Jury Proceedings,* 33 F.3d 342, 350 (4th Cir. 1994). In this case, the district court reviewed *in camera* not the allegedly privileged material, but other evidence intended to establish that the crime-fraud exception applied. In any event, even if *Zolin* applied, Lewinsky gains nothing from the decision. She maintains that the Tripp tapes were not "lawfully obtained" and therefore should not have been considered *in camera.* But the government satisfied its burden wholly apart from the Tripp tapes. Other government evidence—consisting of grand jury testimony and documents—established that the crime-fraud exception applied. Because that other evidence, if believed by the trier of fact, combined with the circumstances under which Lewinsky retained Carter, would establish the elements of the crime-fraud exception, there is no reason for us to consider her arguments about the tapes.[4]

4. Lewinsky's brief suggests, in a short passage, that other evidence obtained by the grand jury is tainted by the alleged illegality of the Tripp tapes. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), refused to extend the exclusionary rule—and hence doctrines such as the fruit-of-the-poisonous-tree—to grand jury proceedings. No grand jury witness may refuse to answer questions on the ground that the questions are based on illegally obtained evidence. *See* 414 U.S. at 353–55, 94 S.Ct. 613. It follows that regardless of the legality of the Tripp tapes,

Lewinsky raises other objections to the district court's decision, including the argument that production of the subpoenaed materials would violate her Fifth Amendment privilege against self-incrimination. Our resolution of the cross-appeal, discussed next, disposes of that claim. As to the remainder of Lewinsky's arguments, we have accorded each of them full consideration and conclude that none has merit.[5]

 This brings us to the Independent Counsel's cross-appeal. The district court ruled that compelling Carter to produce materials his client gave him would violate Lewinsky's Fifth Amendment privilege because it would compel her to admit the materials exist and had been in her possession. The Supreme Court foreclosed that line of reasoning in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Documents transferred from the accused to his attorney are "obtainable without personal compulsion on the accused," and hence the accused's "Fifth Amendment privilege is ... not violated by enforcement of the [subpoena] directed toward [his] attorneys. This is true whether or not the Amendment would have barred a subpoena directing the [accused] to produce the documents while they were in his hands." *Id.* at 398, 397, 96 S.Ct. 1569; *see also Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

Regardless whether Lewinsky herself would have been able to invoke her Fifth Amendment privilege, *but see Andresen v. Maryland,* 427 U.S. 463, 473–74, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the district court's refusal to order full compliance with the subpoenas could be sustained only if the materials sought fell under a valid claim of attorney-client privilege. *See Fisher,* 425 U.S. at 403–05, 96 S.Ct. 1569; *see also In re*

*Feldberg,* 862 F.2d 622, 629 (7th Cir.1988). But the district court held, correctly, that no valid attorney-client privilege existed. Under *Fisher,* the district court therefore should have denied the motions to quash in their entirety.[6]

Accordingly, we affirm in part and reverse in part the order of the district court and remand the case for proceedings consistent with this opinion. No. 98–3053 is dismissed. The mandate shall issue seven days after the date of this opinion. *See* FED. R.APP. P. 41(a); D.C.CIR. R. 41(a)(1); *Johnson v. Bechtel Assocs. Prof. Corp.,* 801 F.2d 412, 415 (D.C.Cir.1986); *Public Citizen Health Research Group v. Auchter,* 702 F.2d 1150, 1159 n. 31 (D.C.Cir.1983).

*So ordered.*

---

the grand jury did not unlawfully obtain the other evidence presented to the district court *in camera.*

5. In her reply brief, Lewinsky argues for the first time that the district court should have permitted her to examine the material the court reviewed *in camera.* This argument comes too late to be considered. *See Rollins Envtl. Servs. (NJ) Inc. v. EPA,* 937 F.2d 649, 652 n. 2 (D.C.Cir.1991).

6. As respondent in the cross-appeal, Carter makes additional arguments against the applicability of the crime-fraud exception. But because the only issue in the cross-appeal is the applicability of the Fifth Amendment, Carter may not use the cross-appeal to press arguments we will not consider in his direct appeal. *See Grimes v. District of Columbia,* 836 F.2d 647, 651–52 (D.C.Cir.1988).