**In re GRAND JURY MATTERS,**

**Appeal of UNITED STATES of America.**

**No. 84–1556.**

United States Court of Appeals, First Circuit.

Argued Sept. 14, 1984.
Decided Dec. 19, 1984.

Robert J. Lynn, First Asst. U.S. Atty., Concord, N.H., with whom W. Stephen Thayer, III, U.S. Atty., Concord, N.H., was on brief, for appellant.

Charles R. Nesson, Cambridge, Mass., for appellees Nancy Gertner, Albert Cullen, and John Wall.

Robert A. Stein, Concord, N.H., with whom Steven M. Gordon, Gregory T. Martin, and Shaheen, Cappiello, Stein & Gordon, Concord, N.H., were on brief, for appellee Steven M. Gordon.

Richard McNamara, Manchester, N.H., with whom Kelly M. Bird and Wiggin & Nourie, Manchester, N.H., were on brief, for appellees New Hampshire Bar Association.

Harry C. Mezer, Boston, Mass., with whom Alan Ellis, Philadelphia, Pa., H. Jonathan Meyer, Manchester, N.H., John Reinstein, Andrew Good, Boston, Mass., were on brief, for amicus curiae National Ass'n of Criminal Defense Lawyers, New Hampshire Civil Liberties Union, Civil Liberties Union of Mass.

and Mass. Ass'n of Criminal Defense Lawyers.

Before CAMPBELL, Chief Judge, COWEN,[*] Senior Circuit Judge, and BREYER, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

The United States appeals from an order of the United States District Court for the District of New Hampshire, 593 F.Supp. 103 granting motions to quash five federal grand jury subpoenas. These subpoenas had been issued to attorneys who, in state criminal prosecutions, were then serving as defense counsel for the same persons the federal grand jury was investigating.

The pertinent facts are few. Federal and state authorities conducted a joint investigation of Stephen Young, Benjamin Valenzuela, Robert Hollingworth, Antimo DiMatteo, and Alvin Karngher for alleged drug and tax offenses. In February 1984, all five men were indicted on state drug charges. Those charges have since been awaiting trial in the Rockingham County Superior Court.

Meanwhile, a federal grand jury was conducting its own investigation. On May 14, 1984, that grand jury issued subpoenas to attorneys Albert Cullen (defense attorney for Stephen Young in the state proceeding), Steven Gordon (defense attorney for Benjamin Valenzuela), Paul Hodes (defense attorney for Robert Hollingworth), John Wall (defense attorney for Antimo DiMatteo), and Nancy Gertner (defense attorney for Alvin Karngher). The subpoenas required these attorneys to appear before the federal grand jury accompanied by records concerning legal fees, expenses or other monies received by them or their law firms from or on behalf of their respective clients.[1] Because Stephen Young allegedly headed the drug "organization," the grand jury's subpoena to his attorney, Albert Cullen, also required Cullen to appear and provide records of the dates, times, places, and attendees (but not the content) of any actual or proposed meetings or telephone conversations between Young and Cullen or employees of Cullen's firm, as well as any information concerning the transfer or other disposition of any funds received by Cullen or his firm from Young.

The attorneys moved in the district court to quash the subpoenas. The New Hampshire Bar Association, the National Association of Criminal Defense Lawyers, the New Hampshire Civil Liberties Union, the Civil Liberties Union of Massachusetts, and the Massachusetts Association of Criminal Defense Lawyers intervened as amici curiae in opposition to the enforcement of the subpoenas.

The district court held a closed evidentiary hearing on the attorneys' motion on July 2, 1984. The government stated that it did not suspect the attorneys of wrongdoing but needed the fee information to tie each client to a drug conspiracy by proving that the legal fees of each were paid by Young or his organization pursuant to pre-existing agreements between Young and his "recruits." The government also filed an *in camera* affidavit that described the nature of its investigation and the basis for the subpoenas in greater detail.

The attorneys argued that the information was protected by attorney-client privilege and work product immunity. They also contended that forced disclosure would violate their clients' fifth amendment privilege against self-incrimination and sixth amendment right to effective counsel. Finally, the attorneys argued that enforcement of the subpoenas would damage the criminal justice system in New Hampshire by undermining the defense bar and dis-

---

[*] Of the Federal Circuit, sitting by designation.

1. These materials included, but were not limited to,
    1. ledgers showing date, amount, form (e.g., cash, check, etc.) and source of any monies received;
    2. copies of deposit tickets, cancelled checks and all other backup documentation for all monies received;
    3. retainer agreements; and
    4. copies of all billings and/or charge or expense invoices or advices.

couraging attorneys from undertaking criminal defense work.

The district court quashed the subpoenas, emphasizing the negative effect that it believed the subpoenas would have on the attorneys' ability to defend their clients in the pending state criminal action. The court expressed concern that forced disclosure would jeopardize the attorney-client relationship at a crucial point in the defense preparations. The court also found that "[t]he actions of the U.S. Attorney are without doubt harassing" and noted that enforcement of the subpoenas in this context would deter attorneys from following a career in criminal law because of the personal and professional traumas resulting from the United States Attorney's investigatory tactics.

## I.

■ Although grand jury subpoenas are issued in the name of the district court, they are issued pro forma and in blank to anyone requesting them without prior court approval or control. Fed.R.Crim.P. 17(a). *See also In re Special Grand Jury No. 81–1 (Harvey)*, 676 F.2d 1005, 1010 (4th Cir.), *vacated on other grounds*, 697 F.2d 112 (4th Cir.1982); *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 90 (3d Cir.1973). These subpoenas are "in fact almost universally instrumentalities of the United States Attorney's office or of some other department of the executive branch." *In re Grand Jury Proceedings (Schofield)*, 486 F.2d at 90.

■ Because this subpoena power may be abused, Fed.R.Crim.P. 17(c) gives the district court, on motion, the power to quash or modify a subpoena duces tecum "if compliance would be unreasonable or oppressive."[2] As this court pointed out in *In re Pantojas*, 628 F.2d 701, 704–05 (1st Cir.1980), "[t]he practical responsibility for controlling grand jury excesses lies with the district court, on which the grand jury must rely for subpoena [enforcement] and contempt procedures." *Id.* at 705.

■ We review a district court decision to quash, or not quash, a grand jury subpoena, solely for abuse of discretion, with much deference being owed to the lower court's authority. *Margoles v. United States*, 402 F.2d 450, 451–52 (7th Cir.1968). *See also* 2 C. Wright, *Federal Practice & Procedure* § 275 (2d ed. 1982) ("the trial court has so much discretion in these matters that reversal is unlikely") (footnote omitted). *Cf. United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).[3] We turn now to whether the district court acted so arbitrarily here as to exceed its very broad, but not limitless, discretion in this area.

## II.

■ In evaluating the district court's exercise of discretion, we begin with the basic principle that the grand jury has the right and duty to procure every man's evidence. *United States v. Dionisio*, 410 U.S. 1, 9–10, 93 S.Ct. 764, 769–70, 35 L.Ed.2d 67 (1973); *In re Lopreato*, 511 F.2d 1150, 1152

---

**2.** Fed.R.Crim.P. 17(c) provides:

For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.

**3.** In *Nixon*, the Supreme Court stated:

Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues. With-

out a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c).

418 U.S. at 702, 94 S.Ct. at 3104. *See also United States v. Lieberman*, 608 F.2d 889, 904 (1st Cir.1979), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980). A grand jury, given its historical status and unique functions, has somewhat broader discretion in casting its subpoenas than parties engaged in pretrial investigations. Nonetheless we think the Court's language in *Nixon* as to the standard of appellate review is pertinent in both situations.

(1st Cir.1975). As the Supreme Court explained,

> Because its task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, [the grand jury's] investigative powers are necessarily broad. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *Blair v. United States,* 250 U.S. 273, 282 [39 S.Ct. 468, 471, 63 L.Ed. 979] (1919). Hence, the grand jury's authority to subpoena witnesses is not only historic, *id.,* at 279–281 [39 S.Ct. at 470–71], but essential to its task. Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that "the public ... has a right to every man's evidence," except for those persons protected by a constitutional, common-law, or statutory privilege, *United States v. Bryan,* 339 U.S. [323] at 331 [70 S.Ct. 724 at 730, 94 L.Ed. 884 (1950)], *Blackmer v. United States,* 284 U.S. 421, 438 [52 S.Ct. 252, 255, 76 L.Ed. 375] (1932); 8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961), is particularly applicable to grand jury proceedings.

*Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972) (footnote omitted).

The Court's above language makes two points relevant here: first, the grand jury's right to every man's evidence is substantively limited only by express "constitutional, common-law, or statutory privilege[s]";

second, the grand jury's "not unlimited" powers are subject to judges' supervisory powers, which, under Fed.R.Crim.P. 17(c), include the power promptly to "quash or modify the subpoena if compliance would be unreasonable or oppressive."

■ We do not see this appeal as involving the first matter, *i.e.,* privilege. Although certain of the appellees and amici have argued that the subpoenaed materials are protected by express privileges, the district court did not quash the subpoenas on the ground of a particular privilege.[4] Rather the court acted from concern over "the crucial factual situation present here": "Defendants have cases pending for trial in the state court[;] the same defendants are under investigation in this court [sic]." The court's repeated references to the "very important premise ... that the actions *are pending* in a New Hampshire State Court," and the cases upon which it relied, make clear that the court below quashed the subpoenas because of the effect the timing of the subpoenas could have on the attorneys' ability to prepare and present their clients' defenses in the pending state criminal action.

The question before us, therefore, is whether, without reference to any specific privilege, the judge was entitled to quash the subpoenas. We believe the answer is "Yes," given the importance that the federal Constitution places upon the right to counsel in criminal prosecutions and the fact that a judge could plausibly determine in these circumstances that the *timing* of the subpoenas unduly and unnecessarily burdened that right.

A judge may quash grand jury subpoenas in the proper exercise of his rule 17(c) supervisory powers even though the sub-

---

**4.** It is well established that "blanket assertions of privilege ... are extremely disfavored," *In re Grand Jury Witness (Salas),* 695 F.2d 359, 362 (9th Cir.1982), and that persons claiming a privilege "must establish the elements of privilege as to each record sought and each question asked so that ... the court can rule with specificity." *Matter of Walsh,* 623 F.2d 489, 493 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). *See also Matter of Witness-*

*es Before Special March 1980 Grand Jury,* 729 F.2d 489, 495 (7th Cir.1984).

Whether or not particular documents are sheltered by the attorney-client privilege, work product immunity or other privilege are separate issues upon which we do not now rule and which may properly be considered in the future. Thus, we also need not address appellant's arguments regarding the lack of specificity of appellees' objections and privilege claims.

poenaed materials are not covered by a statutory, constitutional, or common law privilege. *See, e.g., United States v. Winner*, 641 F.2d 825 (10th Cir.1981) (subpoenaed materials not sufficiently relevant to warrant production); *United States v. Wencke*, 604 F.2d 607 (9th Cir.1979) (subpoena overbroad); *United States v. Daly*, 481 F.2d 28 (8th Cir.) (subpoena quashed as overbroad, unreasonable, oppressive, and lacking in particularity and relevance), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973); *Margoles v. United States*, 402 F.2d 450 (7th Cir.1968) (subpoena clearly overbroad and therefore unreasonable). Under rule 17(c), the district court is called upon to determine whether the subpoenas are "unreasonable and oppressive," not just whether they are privileged. *See, e.g., Matter of Special April 1977 Grand Jury*, 581 F.2d 589 (7th Cir.) (considering privilege question and rule 17(c) reasonableness question separately), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978).

■ This is not to say that judges may arbitrarily interfere with the grand jury's right to every man's evidence. Judges may not, in the guise of exercising supervisory power, create new privileges or enlarge or distort existing ones. As the above quotation from *Branzburg v. Hayes* indicates, the grand jury's substantive right to evidence is restricted only by recognized constitutional, common law or statutory privileges. In the absence of privilege, courts normally will ask only whether the materials requested are relevant to the investigation, whether the subpoenas specify the materials to be produced with reasonable particularity, and whether the subpoena commands production of materials covering only a reasonable period of time. *See, e.g., United States v. Alewelt*, 532 F.2d 1165, 1168 (7th Cir.), *cert. denied*, 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976); *United States v. Gurule*, 437 F.2d 239, 241 (10th Cir.1970), *cert. denied*, 403

U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971); *In re Grand Jury Subpoenas Duces Tecum Addressed to Certain Executive Officers of the M.G. Allen & Associates, Inc.*, 391 F.Supp. 991 (D.R.I.1975).

■ But the above are not necessarily the only questions a judge may ever ask in the exercise of his rule 17(c) supervisory power. In this case the court was presented with a subpoena whose enforcement at the particular moment seemed to it likely to entail consequences more serious than even severe inconveniences occasioned by irrelevant or overbroad requests for records. To call defense attorneys before the grand jury, in connection with an investigation of the same activities for which their clients were standing trial in state court, while the attorneys were preparing for this major felony trial,[5] could be taken as a veiled threat, with such potential for harm to the state defendants and the defense bar as to require the government to show with some particularity why the grand jury's investigation required the execution of the subpoenas at this particularly sensitive moment. While the district court had no right indefinitely to refuse to permit the grand jury to secure unprivileged information, we think it could, within its supervisory powers, control the timing of the subpoenas to this degree.

Although service of a grand jury subpoena on an attorney representing the target of the investigation in pending, related criminal proceedings is not unprecedented, *see, e.g., United States v. Dyer*, 722 F.2d 174 (5th Cir.1983); *In re Terkeltoub*, 256 F.Supp. 683 (S.D.N.Y.1966), it is highly unusual insofar as we can tell from the case law and implicates serious policy concerns. The district court could weigh those policies and conclude that the potential disruption of the attorneys' relationships with their clients at this crucial period in their preparation of their clients' defense made the subpoenas unreasonable and oppressive at the time they were served.

---

5. The subpoenas were returnable on May 17, 1984; the state trials originally were scheduled for mid-July, but at the time of the district court hearing, they were expected to take place "sometime in the winter ... at the earliest."

Appellees suggest a number of ways in which enforcement of these subpoenas during "the critical time between accusation and trial," *Dyer*, 722 F.2d at 178, could jeopardize not only their attorney-client relationships but also their clients' sixth amendment rights. First, they argue that the subpoenas create a conflict of interest between attorney and client. The lawyers' interest lies in avoiding potential contempt sanctions by complying with the subpoenas, or at least by expending the fewest possible resources in resisting them. By contrast, the clients' interest in lessening the likelihood of indictment on additional charges would require the lawyer to do his utmost, including incurring contempt citations, to resist the subpoena. Second, appellees contend that requiring each attorney to become a witness against his client inevitably drives a wedge between attorney and client, *see In re Special Grand Jury No. 81-1 (Harvey)*, 676 F.2d at 1009, may disqualify the attorneys from representing the clients in possible federal proceedings, and potentially may require the attorneys to withdraw from the state criminal cases. Appellees further contend that if the United States Attorney is allowed to enforce this subpoena, he will have a dangerous means by which to control the disqualification of defense attorneys. Finally, appellees point to the chilling message sent to defense attorneys by government prosecutors if, soon after embarking upon the defense of a case, the attorneys are themselves subpoenaed.

These arguments do not constitute determinative objections to the enforcement of a subpoena. There can be no absolute rule that frees an attorney, merely because he is such, to refuse to give unprivileged evidence to a grand jury. Even when trials are pending, the grand jury's right to unprivileged evidence may outweigh the right of the defense bar and its clients not to be disturbed. The matter is one that turns on particular facts as evaluated by a district court. If, for example, the particular facts here had been somewhat different, or if the judge, finding no harassment, had refused to quash the subpoenas, this appeal would

have presented very different issues. All we need here decide is that, given the important responsibilities of a district judge to safeguard against unreasonableness and oppression, and the necessary scope of his discretion, we do not find an abuse on these facts and findings. In reaching this result, we have studied the government's *in camera* submission. Having done so, we cannot say that it shows such an immediate need for inquiry as to outweigh appellees' need to maintain their special and important relationship to their clients at a time the clients are about to be tried on felony charges.

The situation would be different if the government had demonstrated a more urgent need for the information at the very time requested. It might also be different were this not a case in which the United States Attorney has conceded that he "had never suggested that any of the attorneys here is somehow engaged in improper conduct themselves with regard to this particular matter."

We further note the district court's conclusion that the United States Attorney's actions constituted harassment. This is a grave finding, and we are not certain the court meant to imply calculated abuse of the subpoena power rather than simple overzealousness. Still, the district judge is the person charged by law with a determination of whether a subpoena is unreasonable or oppressive. He is closer to the facts than we are. We hesitate to tie his hands in a matter of this seriousness.

In sum, we are unwilling to say that the district court exceeded its discretion in finding the *timing* of the subpoenas to be inappropriate, given the pendency of the state criminal proceedings in which the subpoenaed attorneys were serving as defense counsel. We uphold its quashing of the subpoenas in these particular circumstances and at this particular time. In affirming the district court's order, we do so without prejudice to the government's right to renew the subpoenas at a more suitable moment or upon a more substan-

tial showing of immediate urgency and need.

*Affirmed.*