USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________No. 97-2335 IN RE: GRAND JURY SUBPOENA (SERVED UPON STEPHEN A. ROACH, ESQUIRE). _________________________ AN ANONYMOUS POLICE OFFICER, Intervenor, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy Gertner, U.S. District Judge] _________________________ Before Selya, Boudin and Lynch, Circuit Judges. _________________________ Thomas M. Hoopes, with whom Hoopes and Cronin and Dana A.Curhan were on brief, for intervenor. Louis E. Peraertz, Attorney, U.S. Dep't of Justice, with whomBill Lann Lee, Acting Assistant Attorney General, Dennis J. Dimsey,Attorney, U.S. Dep't of Justice, Donald K. Stern, United StatesAttorney, and S. Theodore Merritt, Assistant United StatesAttorney, were on brief, for respondent. _________________  March 16, 1998 _________________  SELYA, Circuit Judge. This appeal requires us to develop amechanism for modulating the tension that can develop between aprotective order in a civil case, see Fed. R. Civ. P. 26(c), and a grand jury subpoena seeking evidence that falls within theprotective order's compass. The question arises here on appeal from the district court's refusal to quash a grand jury's subpoena duces tecum that demands the production of materials covered, at least in part, by a previously issued civilprotective order. The question presented is new to us, and the decisions elsewhere divide over the correct approach. Afterpondering the problem, we reject the district court's choice of an analytic method, but nevertheless uphold the subpoena. I. BACKGROUND Because of the procedural posture in which this appeal arises, the facts before us afford little expository nourishment. We nonetheless offer the following informational crudit.  On an undetermined date, Michael Cox, an undercover Boston policeofficer, was, it is said, beaten brutally by a band of uniformedpolice officers. To redeem this alleged wrong, Cox sued the City of Boston and several individual officers, including theintervenor in this action, whom we shall call Joe Doakes. Inshort order, the City filed a motion later joined by Doakes for a protective order pursuant to Fed. R. Civ. P. 26(c). Thecourt (Young, U.S.D.J.) granted this request and issued amodifiable order that protected confidential information, definedas including "[a]ny and all Internal Affairs Division [(IAD)]records," as well as exhibits or evidence that incorporate anysuch confidential information. Doakes thereafter gave depositiontestimony on three separate occasions between December 29, 1996,and April 7, 1997. In due season, a federal grand jury initiated an investigationinto the attack. On April 4, 1997, the United States moved tointervene in the civil case and to stay discovery. Judge Younggranted this motion and, with the consent of all parties,administratively closed the case "until April 1, 1998 or [until]any investigation by the [United States] is completed, whichevercomes first." On September 30, 1997, the grand jury summoned Cox's attorney,Stephen A. Roach. The subpoena duces tecum directed Roach toproduce "[a]ll volumes of the deposition, including exhibits, of[Joe Doakes] taken in Michael Cox v. City of Boston, et al." Roach filed a motion requesting the district court to rule whether his compliance with the subpoena would violate theprotective order. Citing the administrative closure of the civilcase file, Judge Young declined to hear the motion and directedRoach to the district court's emergency calendar. Doakes moved tointervene in the proceedings and the duty judge (Gertner,U.S.D.J.) heard Roach's motion for instructions as well asDoakes's motion to quash the subpoena duces tecum. In pressing the motion to quash, Doakes's counsel who had notrepresented him at the start of the civil case argued thatthe protective order safeguarded Doakes's entire deposition (andthe exhibits associated therewith) because he had been questionedextensively about his statement to the IAD. After some backingand filling, not now germane, Judge Gertner denied the motion toquash. In fashioning her decision, the judge adopted the SecondCircuit's balancing test, see Martindell v. International Tel. &Tel. Corp., 594 F.2d 291 (2d Cir. 1979), and determined that, allthings considered, the interests of the criminal investigation inthis instance outweighed the movant's interest in maintaining theconfidentiality of the record (especially since Doakes haddemonstrated no prior reliance on the protective order). II. ANALYSIS We review a district court's fact-based decisions regardingquashal of grand jury subpoenas for abuse of discretion. See Inre Grand Jury Matters, 751 F.2d 13, 16 (1st Cir. 1984). Withal,a court that predicates a discretionary ruling on an erroneousview of the law inevitably abuses its discretion. See Koon v.United States, 116 S. Ct. 2035, 2047 (1996); United States v.Snyder, ___ F.3d ___, ___ (1st Cir. 1998) [No. 97-1233, slip op.at 6-7]. Thus, we review de novo whether the court belowemployed the proper legal formulation in making the decision fromwhich Doakes appeals. See Snyder, ___ F.3d at ___ [slip op. at7]; Soto v. United States, 11 F.3d 15, 17 (1st Cir. 1993). A. Extant Standards. The Second Circuit's Martindell test strives to balance society's interest in obtaining grand jury evidence for law enforcementpurposes with its interest in "the just, speedy, and inexpensive determination of civil disputes . . . by encouraging fulldisclosure of all evidence that might conceivably be relevant." 594 F.2d at 295 (citation and internal quotation marks omitted).  In constructing this test, the Martindell court exalted civil litigation over criminal prosecution on the theory that adeponent's reliance on a protective order merits respect, and the government's evidence-gathering powers are so sweeping that it ordinarily will be "unnecessary" for prosecutors to go behind civil protective orders. Id. at 296. In deference to these considerations, the court declared that, absent a showing of "improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need . . . awitness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government." Id. The Second Circuit's rule positing a presumption in favor ofa protective order when such an order clashes with a grand jurysubpoena has received a cool reception elsewhere. The FourthCircuit declined to follow Martindell, holding instead that "the existence of an otherwise valid protective order [is] not sufficient grounds to quash the subpoena duces tecum issued bythe . . . grand jury." In re Grand Jury Subpoena, 836 F.2d 1468,1478 (4th Cir. 1988). The court adopted this per se rule afterweighing "the authority of a grand jury to gather evidence in a criminal investigation; the deponents' right against self-incrimination; and the goals of liberal discovery and efficient dispute resolution in civil proceedings." Id. at 1471.  Calibrating these scales, the court concluded that society's interest in grand jury access to all relevant informationoverrode any countervailing interest in civil discovery. See id.at 1474-75. Two other circuits have joined the fray, both siding with the Fourth Circuit and advocating a per se rule that invariably prefers grand jury subpoenas over civil protectiveorders. See In re Grand Jury Subpoena, 62 F.3d 1222, 1224 (9th Cir. 1995); In re Grand Jury Proceedings, 995 F.2d 1013, 1020 (11th Cir. 1993). We are uneasy with both of these approaches. Turning first to Martindell, we believe that its creation of a presumptionfavoring the sanctity of civil protective orders tilts the scalesin exactly the wrong direction. By establishing a presumption infavor of civil protective orders, Martindell fails to pay properrespect to what we deem an issue of great importance: society's profound interest in the thorough investigation of potentialcriminal wrongdoing. See Nixon v. Fitzgerald, 457 U.S. 731, 754n.37 (1982) (explaining "that there is a lesser public interest in actions for civil damages than, for example, in criminal prosecutions"). Furthermore, the Martindell rule suffers frompractical infirmities: the principles by which one court shouldadjudge a protective order issued by another court "improvidently granted" are difficult to standardize, and the circumstances under which a United States Attorney might demonstrate a"compelling need" are opaque. In short, the Martindell rule is ill conceived as a matter of policy. The Fourth Circuit's per se rule manifests a different vice: inflexibility. Although the per se rule properly privileges the public's interest in law enforcement over its interest in theresolution of civil controversies, it does so without regard toidiosyncratic circumstances. In other words, this approach putspriorities in proper perspective, but overlooks that the balancenonetheless is variable and that the confluence of the relevant interests generally, those of society at large and of the parties who are seeking to keep a civil protective order inviolate occasionally may militate in favor of blunting a grand jury's subpoena. Because this per se rule obviates allanalysis, it will trench upon legitimate concerns when (even if rarely) a solid case can be made for exceptional treatment.  Always bringing overwhelming force to bear may be acceptable military strategy, but the law often requires a more nuanced approach. B. The Modified Per Se Rule. Regarding both the Martindell rule and the per se rule as flawed to some extent, we chart a different course. The properapproach, we think, is along the following lines: A grand jury'ssubpoena trumps a Rule 26(c) protective order unless the person seeking to avoid the subpoena can demonstrate the existence of exceptional circumstances that clearly favor subordinating the subpoena to the protective order. We believe that this ruleoffers the desired flexibility and at the same time allows room for reasoned analysis in a way that does not undermine thepublic's interest in law enforcement out of a misplaced deference to private parties. See Ajit V. Pai, Comment, Should a GrandJury Subpoena Override a District Court's Protective Order?, 65 U. Chi. L. Rev. 317 (1997) (espousing a similar rule). How this presumption in favor of a grand jury subpoena plays outin each individual case will depend upon the particular facts andcircumstances. When called upon to adjudicate a motion to quasha grand jury subpoena in the face of a civil protective order, adistrict court may mull factors such as the government's need for the information (including the availability of other sources), the severity of the contemplated criminal charges, the harm tosociety should the alleged criminal wrongdoing go unpunished, the interests served by continued maintenance of complete confidentiality in the civil litigation, the value of theprotective order to the timely resolution of that litigation, the harm to the party who sought the protective order if the information is revealed to the grand jury, the severity of theharm alleged by the civil-suit plaintiff, and the harm to societyand the parties should the encroachment upon the protective orderhamper the prosecution or defense of the civil case. In theend, society's interest in the assiduous prosecution of criminalwrongdoing almost always will outweigh its interest in theresolution of a civil matter between private parties, see, e.g.,Nixon, 457 U.S. at 754 n.37, and thus, a civil protective orderordinarily cannot be permitted to sidetrack a grand jury'sinvestigation. C. The Remedy. We are mindful that the district court, compelled by conflicting precedent to guess at the rule of decision, applied the wronglegal standard. Ordinarily, such a chain of events counsels in favor of a remand. Yet, when a trial court misperceives the applicable rule of law, remand is not always required. If the record is sufficiently informative and the court has madesufficiently detailed findings, it sometimes is possible for an appellate tribunal to take those findings, marry them to the correct rule of law, and render a decision. See, e.g., UnitedStates v. Pierro, 32 F.3d 611, 622 (1st Cir. 1994); Societe des Produits Nestle v. Casa Helvetia, Inc., 982 F.2d 633, 640-41, 642 (1st Cir. 1992); United States v. Mora, 821 F.2d 860, 869 (1st Cir. 1987). This is such a case. The record yields all the information acourt is likely to need in order to rule upon a motion to quash. In addition, Judge Gertner made certain relevant findings. Moreimportantly, the record is barren of any evidence that wouldpermit a court to find exceptional circumstances, or that mighttend to show that the public interest would be served by takingthe unusual step of preferring the civil protective order overthe grand jury subpoena. The subpoenaed information is highlyrelevant, the contemplated criminal charges are serious, the needfor deterrence is great, the public interest in prosecutingpolice brutality cases is obvious, and, conversely, a limitedincursion on the protective order will neither delay the civillitigation (which is stayed) nor unfairly skew its outcome. We will not paint the lily. Remand would serve no useful purposebecause the record presents insurmountable obstacles forDoakes. Indeed, even though Judge Gertner erroneously used alegal standard much more congenial to Doakes's position alegal standard which incorrectly presumed that a protective orderordinarily would prevail over a grand jury subpoena she foundthat the subpoena should be enforced. As the correct legalstandard treats grand jury subpoenas with considerably morerespect than the standard employed below, and as the judge'sfindings of fact are entirely supportable, the subpoena'ssurvival is assured. We need go no further.Affirmed.