Agnes, A.J.
MEMORANDUM AND ORDER
There is pending before the Grand Jury for Middle-sex County an investigation into a homicide that took place in 2000. In particular, the grand jury is considering evidence that a witness who testified before the grand jury who will be referred to as Doe[1] committed perjury. The matter is before the court on a motion by the prosecutor for a judicial order pursuant to Rule 3:8(f)(2) of the Massachusetts Rules of Professional Conduct (“Special Responsibilities of a Prosecutor”), S.J.C. Rule 3:07, authorizing a subpoena ad testificandum and a subpoena duces tecum to be issued to an attorney and member of the Massachusetts bar, who will be referred to as Roe, to testify and to produce certain records he may have about a conversation with Doe.[2] It appears that attorney Roe represented a person, Poe, who was implicated in the victim’s murder by Doe and who thereafter pled guilty to manslaughter. After conducting an adversarial hearing, *355 the court concludes that Rule 3.8(f)(2) is not applicable in the circumstances of this case, and that the prosecutor is free to exercise his prosecutorial discretion about how to proceed in this matter.
FACTUAL BACKGROUND
Based on the documents submitted by the Commonwealth and the undisputed facts acknowledged by the parties at the hearing held on September 18,2002, I make the following findings of fact.[3] On the day following the shooting death of the victim, the Assistant District Attorney was assigned to the investigation. At his direction, many of the persons who were witnesses to the shooting were interviewed. One week later, Doe testified before the grand jury. He was advised of Miranda rights (exhibit 1 at 3-4). He testified that moments before the shooting, Poe was standing next to him and holding a .45 caliber handgun (exhibit 1 at 43-45). He heard a shot and saw that Poe had fired his handgun (exhibit 1 at 47). Doe testified further that he next saw Poe point his gun at a motor vehicle and fire several shots (exhibit 1 at 48-50). Doe said he heard the sound of more than one gun and then he ran (exhibit 1 at 50-53). Doe also testified that he first learned that the victim had been shot when he arrived at the police station where he identified Poe from photographs as one of the shooters and the .45 caliber handgun involved in the shooting (exhibit 1 at 55).
In December 2000, the grand jury returned an indictment against Poe charging him with murder (exhibit 3). At the time, an appearance was filed on his behalf by another attorney (exhibit 3). I accept the representations by counsel for attorney Roe made at the hearing in this matter that attorney Roe represented Poe in connection with the shooting death of the victim even prior to Poe’s arraignment in the Superior Court (T. 8-9). Due to the difficulty in raising funds, Poe was not able to secure an appearance in his case by attorney Roe until April 2002 (exhibit 3), but attorney Roe had an attorney-client relationship with him prior to that including in August 2001 when Doe called attorney Roe and later signed a statement recanting his grand jury testimony (exhibit 2). Poe pled guilty to the lesser included offense of manslaughter on July 22, 2002.
In the meantime, the record before me indicates that in August 2001, Doe telephoned attorney Roe and told him he had lied in statements he had given to the police and before the grand jury, and asked to meet with attorney Roe (exhibit 2). Doe’s written statement also indicates that he met with attorney Roe and an investigator working for attorney Roe on August 20, 2001 (exhibit 2). Thereafter, on August 28, 2001, Doe signed a written statement which concludes with the declaration, contrary to his grand jury testimony, that “I never saw Poe cock or fire a gun” (exhibit 2).
The prosecutor informed the court that the sole purpose in calling attorney Roe as a witness before the grand jury is with regard to his knowledge of Doe’s alleged perjury, i.e., his direct knowledge that Doe lied to the grand jury from conversations he allegedly had with Doe, and his role in preparing the written statement signed by Doe (T. 13-14). The prosecutor also has informed the court that there is no ongoing investigation of Poe and he does not seek to elicit any information from attorney Roe about his representation of Poe (T. 14-15). The prosecutor also informed the court that he intends to subpoena the investigator, but has not yet been able to effectuate service on him.
In opposing the Commonwealth’s motion, counsel for attorney Roe has expressed concern that there is at least the possibility that as a result of testimony that attorney Roe might give to the grand juiy, Poe, his former client, could be exposed to additional charges (T. 17-18). For example, if it turns out that Doe had received encouragement or remuneration from Poe to induce him to recant his statements and testimony before the grand jury, it is possible that such evidence could come to light from the content of Doe’s conversations with attorney Roe (E.g., "Hello, attorney Roe. My name is Doe. Poe suggested I call you and speak to you about my grand jury testimony . ..”) (T. 19-22). Thus, counsel for attorney Roe suggests that his client should not be required to testify before the grand jury unless the Commonwealth grants immunity to Poe from any further prosecution.
RULINGS OF LAW
1. Introduction. Rule 3:8(f) of the Massachusetts Rules of Professional Conduct (“Special Responsibilities of a Prosecutor”), S.J.C. Rule 3:07, provides that the prosecutor in a criminal case shall:
(f) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless:
(1) the prosecutor reasonably believes:
(i) the information sought is not protected from disclosure by any applicable privilege;
(ii) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and
(iii) there is no other feasible alternative to obtain the information; and
(2) the prosecutor obtains prior judicial approval after an opportunity for an adversarial proceeding.
2. Brief history of Rule 3.8(f). Rule 3.8(f), is part of the Massachusetts Rules of Professional Conduct, Rule 3:07 of the Rules of the Supreme Judicial Court, and appears in a section of rules under the heading “Special Responsibilities of a Prosecutor.” It was adopted on June 9, 1997 and became effective on January 1, 1998. See Rules of the Supreme Judicial Court, 426 Mass. 1301, 1302. In the same order, the court struck out portions of what was then Rule 3:08 of the Rules of the Supreme Judicial Court (“Disciplinary Rules Applicable to Practice as a Prosecutor or as *356 a Defense Lawyer”) including the section known as PF 15.[4] That section was inserted in the rules of the Supreme Judicial Court by an order dated October 1, 1985 and took effect on January 1, 1986. See Rules of the Supreme Judicial Court, 396 Mass. 1217. PF 15 provided as follows:
It is unprofessional conduct for a prosecutor to subpoena an attorney to the grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel the attorney to provide evidence concerning a person who is represented by the attorney/witness.
The somewhat complex history of how PF 15 evolved into Rule 3.8(f) is told in Stern v. United States District Court for the District of Massachusetts, 214 F.3d 4 (1st Cir. 2000) (concluding that the current rule is not valid as against members of the Massachusetts bar serving as federal prosecutors in Massachusetts). See also Stern & Hoffman, Privileged Informers: The Attorney Subpoena Problem and a Proposal for Reform, 136 U.Pa.L.Rev. 1783 (1988). Suffice it to say that the Massachusetts Bar Association developed and proposed PF 15 to the Supreme Judicial Court in reaction to evidence in the 1980s that federal prosecutors were summonsing defense attorneys to testify before grand juries about persons they were representing at the time and who were targets of the investigation. One case in particular was the catalyst for the initiative. See In re Grand Jury Matters, 593 F.Sup. 103 (D.N.H.), affirmed, 751 F.2d 13 (1st Cir. 1984). Because the federal courts traditionally follow the ethical rules applicable to attorneys that are adopted by the state court, litigation over the rule’s validity in the federal system ensued. See United States v. Klubock, 639 F.Sup. 117 (D.Mass. 1986), affirmed, 832 F.2d 664 (1st Cir. 1987) (enbanc) (upholding the validity of the rule by an equally divided court). PF 15 spawned a number of similar rule changes around the country[5] including a change in the Model Rules of Professional Conduct promulgated by the American Bar Association. The current Massachusetts Rule, Rule 3:8(f) of the Massachusetts Rules of Professional Conduct (“Special Responsibilities of a Prosecutor”), S.J.C. Rule 3:07, is based on the American Bar Association proposal.
3. Scope of Rule 3.8(f). Rule 3.8(f), like its predecessor, PF 15, does not enlarge the attorney-client privilege or create a new privilege. Rather, it is both an ethical rule and a substantive restraint on the evidence gathering methods that may be used by prosecutors in circumstances in which information sought from an attorney may affect the interests of a past or present client. The rule, like its predecessor, seeks to avoid the “chilling” of the attorney-client relationship that may occur when an attorney is called as a witness before the grand jury or other criminal proceeding to present evidence about a client, the creation of conflicting interests between attorneys and clients, and possible abuses of the adversarial system. See In the Matter of a Grand Jury Investigation, 407 Mass. 916, 918 (1990). Here, the prosecutor has informed the court that he does not seek the testimony of attorney Roe about a past or present client. There is nothing in the record before me that suggests otherwise. Contrast, State v. Wong, 97 Hawaii 512, 40 P.3d 914 (2002).
According to the plain and unambiguous language of Rule 3.8(f), it applies only when the prosecutor seeks from the attorney “evidence about a past or present client. . .” See In re Grand Jury Subpoena, Misc. No. 86-738, 1986 WL 13539 (D.Mass. Nov. 26, 1986) (Young, J.) (discussing scope of PF 15). See also Commonwealth v. Triplett, 1995 WL 1271638 (Superior Court) (June 21, 1995) (Carhart, J.) (4 Mass. L. Rptr. 370) (noting that PF 15 applies only to subpoenas issued to the target’s attorney requesting evidence concerning the target). It does not confer on attorneys as attorneys a special status that limits the authority of prosecutors in all situations to call them before the grand jury to give testimony. Contrast, Uniform Rules on Subpoenas to Court Officials, Rule IX of the Rules of the Trial Court (in all cases, prior judicial approval must be obtained to subpoena a justice, magistrate or probation officer). See also G.L.c. 276, §1 (limiting the use of search warrants directed at attorneys for documentary evidence that may be protected by a privilege unless the attorney is involved in criminal activity). This is in keeping with the traditional view that “there can be no absolute rule that frees an attorney, merely because he is such, to refuse to give unprivileged evidence to a grand jury.” In re Grand Jury Matters, 751 F.2d 13, 19 (1st Cir. 1984). See also Comment 4 to Rule 3.8(f).
In In re Grand Jury Subpoena Judge Young offered sound reasons for not interpreting a rule like PF 15 or by extension 3.8(f) to have applicability in circumstances beyond the reach of its plain meaning.
To extend the reach of PF15 beyond this scope invites a number of extraordinarily adverse consequences. PF15 is, quite properly, an ethical constraint upon those charged with one of our society’s most demanding, complex, and necessary functionsthe proper enforcement of our criminal laws. This is a rule with teeth; it’s violation may have most serious disciplinary consequences for an individual prosecutor. It is the type of rule which can, quite literally, affect an attorney’s career should its mandate not be obeyed. It must, therefore, be readily understandable by both prosecutors and defense counsel alike. This Court concludes that it is precisely for this reason that the Justices of the Massachusetts Supreme Judicial Court adopted such a straightforward and direct rule. To blur the limits of its applicability could well serve to cause cautious prosecutors to submit to a reviewing judge beforehand every subpoena to be *357 served upon an attorney, a requirement which no doubt would be approved by the criminal defense bar but which, as the present instance demonstrates, invites preliminary skirmishing over matters which may have nothing whatsoever to do with the substance of an appropriate grand jury investigation. More important, such a formless rule would properly be considered little more than a special privilege accorded lawyers and no others. Such a result is manifestly improper. “The grand jury has broad investigative power; with limited exceptions, it has a right to every person’s evidence.” United States v. Klubock, 639 F.Sup. at 124, citing United States v. Bryan, 339 U.S. 323, 331 (1959).

In re Grand Jury Subpoena, supra,

ORDER
For the above reasons, in the circumstances of this case, the prosecutor is not required to obtain prior judicial approval before serving a subpoena on attorney Roe ordering him to appear before the grand juiy to give testimony and to produce records relating to conversations and meetings with Doe. Attorney Roe retains the right to move to quash the subpoena for his testimony or records on traditional grounds. See Mass.R.Crim.P. 17. Should it become apparent at any time that the scope of the inquiry by the prosecutor or the grand jury extends to matters that relate to Poe, attorney Roe’s former client, attorney Roe may decline to testify on grounds that the requirements of Rule 3:8(0 of the Massachusetts Rules of Professional Conduct (“Special Responsibilities of a Prosecutor”), S.J.C. Rule 3:07 have not been observed.
This order shall be stayed for 10 days to permit counsel for attorney Roe to seek interlocutory appellate judicial review.

Pseudonyms will be used throughout this decision to refer to the witnesses.

The prosecutor’s application consists of a motion and affidavit by the prosecutor, grand jury minutes of the testimony of Doe (exhibit 1), a statement signed by Doe (exhibit 2), arid an appearance of counsel by attorney Roe for Poe and a docket sheet in his Middlesex County Superior Court Case.

A transcript of the adversarial hearing conducted on September 18, 2002 has been prepared and ordered impounded until further order of the court. References to the pages of this transcript are designated T._.” The prosecutor has submitted an affidavit and three exhibits in support of the application. These include a transcript of Doe’s grand jury testimony (exhibit 1), a written statement signed by Doe (exhibit 2), and an appearance of counsel and docket sheets in the case against Poe (exhibit 3).

The remainder of Rule 3:08 of the Rules of the Supreme Judicial Court was struck out by an order dated December 8, 1998 and which took effect on January 1, 1999. See Rules of the Supreme Judicial Court, 428 Mass. 1301, 1304.

For example, In 1988, Rhode Island adopted a rule modeled on PF 15 that extended the reach of the rule beyond the grand jury and added a comment that contained standards for the exercise of judicial discretion which suggested judicial approval should be withheld unless the information sought was not privileged, was essential to the government’s investigation, and was unobtainable from any other feasible source. That rule narrowly survived a challenge that sought to declare it invalid as in excess of the federal court’s authority. Whitehouse v. United States District Court, 53 F.3d 1349 (1st Cir. 1995).