# United States Court of Appeals

## For the First Circuit

No. 10-2048

IN RE GRAND JURY SUBPOENA (MR. S.).

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Ripple[*] and Selya,

Circuit Judges.

Robert C. Andrews, with whom Robert C. Andrews Esquire P.C. was on brief, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

November 1, 2011

_____

[*]Of the Seventh Circuit, sitting by designation.

**SELYA**, **Circuit Judge**. This appeal challenges the district court's refusal to quash a grand jury subpoena. It poses questions about the attorney-client and Fifth Amendment privileges. After careful consideration, we affirm.

## I. BACKGROUND

We begin with a brief account of the relevant facts. To preserve the confidentiality of grand jury proceedings, see Fed. R. Crim. P. 6(e), we use pseudonyms in place of the real names of the protagonists.

On August 24, 2009, a federal grand jury in the District of Maine directed a subpoena to the custodian of records at the Doe Law Office, commanding production of:

> Any and all records relating to the purchase of real property by [Mr. S.] from [Mr. and Mrs. X] on November 20, 2007, that was facilitated by [Attorney Doe's Law Office and Title Company,] including, but not limited to, real estate HUD statements, closing statement, sales contract(s) and record of payment, particularly the source and type of funds used (cash, personal check, bank checks, etc.) to purchase the property by [Mr. S.] and/or any other person.

Attorney Doe contacted Mr. S. to verify that he did not object to production of the subpoenaed documents. Having secured Mr. S.'s verbal consent, Doe complied with the subpoena and produced the documents.[1]

---

[1] To facilitate an understanding of the issues presented in this appeal, we set forth an inventory of the delivered documents in an appendix to this opinion.

Within a matter of days, Mr. S. had second thoughts. He retained separate counsel, who notified the United States Attorney's Office (USAO) that the documents were privileged. By that time, however, the documents had been inspected by a USAO paralegal. To maintain the status quo pending a determination of the claim of privilege, the USAO placed them under seal.

In due course, Mr. S. moved to quash the subpoena. See Fed. R. Crim. P. 17(c)(2). He principally argued that the subpoenaed documents were protected by the attorney-client privilege. In support, he noted that Doe is licensed to practice law and professes to have special expertise in real estate transactions; that he sought Doe's legal services in connection with the real estate transaction identified in the subpoena; and that Doe represented him in that transaction, billed him for services rendered, and "used his client trust account" while performing those services. He added that Doe employed the term "Esquire" when signing "documents and correspondence."

As a fallback, Mr. S. also argued that if the subpoenaed documents had been in his possession, the act of production would have been testimonial and, thus, protected by a Fifth Amendment privilege. Therefore, he insisted, the government could not compel Doe to produce those documents over his objection.

The government opposed the motion to quash. It asserted that neither the attorney-client privilege nor the Fifth Amendment

privilege applied.  In addition, it submitted the documents that Doe had delivered for in camera review.

In his reply, Mr. S. took a new slant.  He cited Fisher v. United States, 425 U.S. 391 (1976), for the proposition that a combination of the attorney-client and Fifth Amendment privileges blocked any compelled disclosure of the subpoenaed documents.

The district court referred the motion to a magistrate judge.  See 28 U.S.C. § 636(b).  The magistrate judge examined the documents in camera and determined that no privilege attached. Specifically, the magistrate judge found that nothing in the subpoenaed documents "reflect[ed] the seeking or provision of legal advice" and that those documents "lack a confidential nature." Accordingly, he denied the motion to quash.[2]

After some backing and filling not relevant here, Mr. S. lodged objections to the magistrate judge's order.  The district court independently examined the documents in camera and reviewed the legal issues posed by Mr. S.'s objections.  It then summarily affirmed the magistrate judge's order.  This timely appeal followed.

---

[2] The magistrate judge purported to make a binding order rather than a recommendation.  That procedure is problematic, given the dispositive character of the motion.  See NLRB v. Frazier, 966 F.2d 812, 816-18 (3d Cir. 1992).  But neither side has questioned the procedure and, in view of the district court's de novo review, any error was harmless.

-4-

When evaluating a privilege determination, the standard of review varies according to the nature of the precise issue involved.  See In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 21 (1st Cir. 2003).  Rulings on questions of law are reviewed de novo, findings of fact are reviewed for clear error, and evidentiary determinations are reviewed for abuse of discretion.  Id.

## II.  ANALYSIS

It is an ancient platitude that a grand jury has a right to every man's evidence.  Yet this right is not absolute.  For present purposes, three examples have potential pertinence.

First, an individual may invoke the attorney-client privilege to avoid the production of documents that are the fruits of confidential communications between him and his attorney.  Miss. Pub. Emps.' Ret. Sys. v. Bos. Scientific Corp., 649 F.3d 5, 30 (1st Cir. 2011).  Second, an individual may assert the Fifth Amendment to prevent the compelled production of documents in his possession if the act of production is both testimonial and self-incriminating.  See Fisher, 425 U.S. at 408.  Third, if an individual possesses documents that are privileged from compelled disclosure under the Fifth Amendment and transfers them to his counsel in order to obtain legal advice, those documents are protected under the attorney-client privilege.  Id. at 402-05 (explaining that in such a situation, "the papers, if unobtainable

-5-

by summons from the client, are unobtainable by summons directed to the attorney").

In this venue, Mr. S. argues that the subpoenaed documents are protected from compelled divulgement by the attorney-client and Fifth Amendment privileges, severally and in combination. He also advances a claim of procedural error. We start there.

### A.  In Camera Review.

Prior to ruling on the motion to quash, the district court reviewed the subpoenaed documents in camera and determined that they were not privileged. While Mr. S. does not directly dispute the findings derived from this review, he asserts that it was error for the court to conduct an in camera review before the government had produced sufficient evidence to support a reasonable belief that the documents were evidence of a crime or fraud. Mr. S.'s assertion is triply flawed.

First, it is not necessary to resort to the crime-fraud exception to the attorney-client privilege, until the privilege itself has been attached. The burden of showing that documents are privileged rests with the party asserting the privilege. See In re Keeper of the Records, 348 F.3d at 22. Mr. S.'s position constitutes a thinly veiled effort to turn this principle inside out and shift that burden to the government.

Second, Mr. S.'s position represents a disingenuous attempt to graft onto this case the facts and holding of United States v. Zolin, 491 U.S. 554 (1989). In Zolin, the Court considered the crime-fraud exception to the attorney-client privilege (the lower courts had found that the privilege was established). Id. at 563-64. The Court held, among other things, that when a party seeks to invoke the crime-fraud exception, a modest evidentiary threshold must be crossed before a judge may conduct an in camera review. Id. at 570-72. To be specific, the party must make a factual showing "sufficient to support a reasonable belief that in camera review may yield evidence that establishes the [crime-fraud] exception's applicability." Id. at 574-75.

Seizing upon this holding, Mr. S. argues that the district court was not entitled to inspect the documents because there is no evidence indicating that the crime-fraud exception applies. That argument is off-point because the crime-fraud exception is not implicated in this case. Rather, the government asserts that the essential elements of the attorney-client privilege itself are lacking. Zolin is, therefore, inapposite.

Third, and most important, the very purpose of conducting an in camera review is to determine which, if any, of a group of documents are privileged. Given this prudential purpose, in camera reviews should be encouraged, not discouraged. In that spirit,

-7-

federal courts commonly — and appropriately — conduct such reviews to determine whether particular documents are or are not privileged.  See id. at 569 (noting that the Court "has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection, and th[is] practice is well established in the federal courts" (internal citations omitted)); cf. In re Grand Jury Subpoenas, 123 F.3d 695, 699-700 (1st Cir. 1997) (remanding for failure to conduct an in camera review).

When, as in this case, the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is heightened.  See United States v. Smith, 123 F.3d 140, 151 (3d Cir. 1997).  Even if the parties do not explicitly request such a step, a district court may be well advised to conduct an in camera review.  The court below acted wisely and within the scope of its discretion in doing so.

## B.  **Attorney-Client Privilege**.

Mr. S. next argues that the district court erred in allocating the burden of proof vis-à-vis his claim of attorney-client privilege.  He says that the court required him to establish, by a preponderance of the evidence, that the subpoenaed documents fell within the ambit of the privilege and that this was too heavy a burden because he should only have been required to make a prima facie showing.

The proper quantum of proof in a situation of this kind is fairly debatable. In this case, however, the absence of any meaningful showing of privilege renders it unnecessary to enter that debate.

Privilege determinations are made by the court. See Fed. R. Evid. 104(a); United States v. Wilson, 798 F.2d 509, 512 (1st Cir. 1986). The scope of the attorney-client privilege must be ascertained by reference to "principles of [federal] common law as they may be interpreted . . . in the light of reason and experience." Fed. R. Evid. 501; see Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002).

The attorney-client privilege is the most venerable of the safeguards afforded to confidential communications and is enshrined as such in the federal common law. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The rationale that undergirds the privilege is easily understood: treating communications between lawyer and client as confidential encourages full and frank disclosure that better enables the lawyer to represent the client and better enables the client to conform his conduct to the law. See In re Keeper of the Records, 348 F.3d at 22. But the cloak of confidentiality has costs as well as benefits, and courts must take care to construe this privilege narrowly. See id.

In harmony with the need for narrow construction, the case law makes manifest that the attorney-client privilege attaches only:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Cavallaro, 284 F.3d at 245 (quoting 8 J.H. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)).  A failure to satisfy any one of the enumerated elements defeats the claim of privilege. See Wilson, 798 F.2d at 512-13.

It is clear beyond hope of contradiction that the party seeking to invoke the attorney-client privilege must carry the devoir of persuasion to show that it applies to a particular communication and has not been waived. See In re Keeper of the Records, 348 F.3d at 22.  Whatever quantum of proof is necessary to satisfy this obligation, a blanket assertion of privilege is generally insufficient. See In re Grand Jury Proceedings, 616 F.3d 1172, 1183 (10th Cir. 2010); In re Grand Jury Matters, 751 F.2d 13, 17 n.4 (1st Cir. 1984); United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983).  Determining whether documents are privileged demands a highly fact-specific analysis — one that most often requires the party seeking to validate a claim of privilege to do so document by document.  In re Grand Jury Proceedings, 220 F.3d

-10-

568, 571 (7th Cir. 2000); In re Grand Jury Matters, 751 F.2d at 17 n.4.

In the case at hand, Mr. S. has made only a blanket assertion of privilege. He has not identified any specific document as coming within the attorney-client privilege. On this record, then, the quantum of proof is immaterial. Even if we assume, favorably to Mr. S., that a prima facie standard applies, his proffer falls short. We explain briefly.

In his motion papers, Mr. S. set forth the following facts in support of his claim of privilege. Doe is licensed to practice law and holds himself out as an attorney with special expertise in real estate transactions; Mr. S. sought Doe's legal services in connection with the real estate transaction identified in the subpoena; Doe represented him as his lawyer in that transaction and billed him for the related legal services; Doe "used his client trust account" and "signed documents and correspondence," employing the descriptor "Esquire."

These facts cannot be assessed in a vacuum but, rather, must be viewed in light of the government's opposition and the proffered documents. See Holifield v. United States, 909 F.2d 201, 203-05 (7th Cir. 1990) ("Any attempt to make [an attorney-client privilege] determination without [an adequate] factual foundation amounts to nothing more than a waste of judicial time and resources."). Evaluated through this lens, Mr. S.'s perfunctory

-11-

assertion of privilege is insufficient to show that the attorney-client privilege attaches to any particular item or items identified by the subpoena.

Mr. S.'s assertion of privilege is especially weak because the documents listed in the subpoena — HUD statements, closing statement, sales contract(s) and records of payment indicating the source and type of funds used — would all have been revealed at the closing and are, therefore, not confidential in nature. See, e.g., In re Grand Jury Subpoena, 831 F.2d 225, 227-28 (11th Cir. 1987) (noting that the attorney-client privilege did not apply to closing statements and purchase contracts for property transactions because the documents "lack a confidential nature" (citation and internal quotation marks omitted)); United States v. Aronson, 781 F.2d 1580, 1581 (11th Cir. 1986) (per curiam) (holding that certain documents regarding the disposition of real estate, "which by their very nature contemplate disclosure to third parties . . . are not within the scope of the attorney-client privilege"); United States v. McDonald, 313 F.2d 832, 833-35 (2d Cir. 1963) (finding "no basis" for claim that the attorney-client privilege applies to closing statements and sales contracts relating to real estate because the "client necessarily contemplated divulging the information requested to other parties at the closing").

In keeping with the generally non-confidential nature of the type and kind of documents identified in the subpoena, Mr. S.'s

motion papers contain no direct assertion that any particular document is, or was ever intended to be, confidential.  By the same token, there is nothing in the record suggesting that the creation of the documents involved the giving of legal advice.  Not every piece of an attorney's work product falls within the attorney-client privilege.  Where, for example, an attorney acts merely as a scrivener — facilitating the consummation of a real estate transaction, passing title, and disbursing funds — the documents generated by those actions are typically not privileged.[3]  See, e.g., United States v. Davis, 636 F.2d 1028, 1044 (5th Cir. Unit A Feb. 1981) (Wisdom, J.) ("An attorney who acts as his client's . . . agent for receipt or disbursement of money or property to or from third parties . . . is not acting in a legal capacity, and records of such transactions are not privileged."); Pollock v. United States, 202 F.2d 281, 285-86 (5th Cir. 1953) (similar); United States v. De Vasto, 52 F.2d 26, 30 (2d Cir. 1931) (similar).

So it is here.  Mr. S.'s own assertions indicate that Doe acted as a title attorney, and the documents and records submitted

---

[3] We caution that there is no flat rule exempting all communications between a title attorney and a client from the reach of the attorney-client privilege.  It takes little imagination to conceive instances in which a particular communication regarding a real estate closing may satisfy all of the requirements of the attorney-client privilege.  It is, however, the responsibility of the individual who asserts the privilege to establish its existence with respect to specific documents.  See In re Keeper of the Records, 348 F.3d at 22.  As we already have explained, Mr. S. has not met that requirement.

in response to the subpoena bear out that characterization. To cinch matters, Mr. S. provides no fact-based reason to believe that generating the subpoenaed documents required Doe to act as more than a mere scrivener and disburser of funds. In short, Mr. S. has failed to make even a prima facie showing that any of the subpoenaed documents are privileged.

### C. **Fifth Amendment Privilege**.

"[T]he Fifth Amendment protects the person asserting the privilege only from <u>compelled</u> self-incrimination." <u>United States</u> v. <u>Doe</u>, 465 U.S. 605, 610 (1984) (emphasis in original) (citing <u>Fisher</u>, 425 U.S. at 396). It is, however, settled law "that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." <u>United States</u> v. <u>Hubbell</u>, 530 U.S. 27, 35-36 (2000).

The Supreme Court has declared that the act of producing documents is protected by the Fifth Amendment when that act is both testimonial and self-incriminating. <u>See</u> <u>Fisher</u>, 425 U.S. at 408. Such a case may arise when an individual's compelled production of documents would amount to a tacit concession that the documents exist, are authentic, and are in his custody or control. <u>See</u> <u>Hubbell</u>, 530 U.S. at 36; <u>Fisher</u>, 425 U.S. at 410.

-14-

This is not to say that the act of producing documents is always, or even normally, privileged. Determining whether an act of production is both testimonial and self-incriminating requires a particularized case-by-case analysis. See Fisher, 425 U.S. at 410; Amato v. United States, 450 F.3d 46, 50 (1st Cir. 2006). And there is a further caveat: even though the Fifth Amendment protects against compelled acts of production that are both testimonial and self-incriminating, this prophylaxis is limited to the individual who is being compelled. See Couch v. United States, 409 U.S. 322, 328 (1973); see also U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."). In other words, the protection afforded by the Fifth Amendment prohibits only the use of compulsion exerted against the privilege-holder himself. Fisher, 425 U.S. at 397.

It follows that an individual's Fifth Amendment privilege is not offended by the enforcement of process directed toward a third party — even if that third party is his lawyer. See id. "This is true whether or not the Amendment would have barred a subpoena directing the [individual] to produce the documents while they were in his hands." Id. These precedents leave no apparent space for Mr. S. to rely on the Fifth Amendment to prevent a third party — Doe — from producing the subpoenaed documents. See id. at 402.

In an effort to blunt the force of this reasoning, Mr. S. argues that a combination of the Fifth Amendment's protection against compelled testimonial acts and the attorney-client privilege supplies an adequate basis to quash the subpoena. We think not.

Mr. S.'s hybrid argument derives from Fisher, 425 U.S. at 402-05, in which the Court observed that if an individual who enjoys a Fifth Amendment privilege against producing documents transfers those documents to his attorney for the purpose of securing legal advice, then the documents are protected from compelled production by reason of the attorney-client privilege. Mr. S. strives to persuade us that Fisher gives him the right to prevent the subpoenaed documents from reaching the grand jury. We are not convinced. This case simply does not fit the Fisher model.

To begin, the record does not indicate that Mr. S. transferred any preexisting documents to Doe. Based on the assertions made in Mr. S.'s motion papers, he approached Doe to complete a discrete real estate transaction. For aught that appears, Doe himself prepared the standard documents needed to consummate the transaction, handled the closing, disbursed the funds, and retained copies of the documents and payment records.

Ultimately, though, determining whether the subpoenaed documents are preexisting or not is of no moment. Either way, there is no showing that they are protected by the attorney-client

privilege because, for reasons already explained, Mr. S. failed to establish that any documents were tendered to Doe for the purpose of obtaining legal advice.  See Davis, 636 F.2d at 1043 ("Both preexisting documents and documents created in the course of the attorney-client relationship must fall within the common-law standards for attorney-client privilege to be protected under the Fisher test.").  Mr. S. also failed to establish that the documents (whoever crafted them) were confidential.  Because there is no showing that the attorney-client privilege attaches to any of the subpoenaed documents, Fisher does not apply.  See In re Grand Jury (Attorney-Client Privilege), 527 F.3d 200, 201-02 (D.C. Cir. 2008). Given this reality, it does not matter whether or not Mr. S. would have had a Fifth Amendment privilege to withhold the documents if they were in his possession.  See id.; In re Sealed Case, 162 F.3d 670, 675 (D.C. Cir. 1998).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we affirm the district court's denial of the motion to quash.


**Affirmed**.

-17-

## **Appendix**

1.  Records of payments and fund disbursements.

2.  Deed.

3.  Settlement statement.

4.  Property tax declaration and disclaimer.

5.  Notice of Title Insurance Availability.

6.  Transmittal note indicating proper name to insert in all real estate documents, selling price, and purchaser's address.

7.  Certificate of Authenticity.